**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 93-1676

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAY DELL DEVOLL,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

( November 28, 1994 )

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

Ray Dell Devoll appeals his convictions by a jury of 15 counts of a 17-count indictment, including conspiracy, bank fraud, false statements to a federally insured financial institution, mail fraud, and violation of Federal Reserve System Orders of Prohibition. Devoll contends that the counts charging violations of 18 U.S.C. § 1014 were defective, that the jury instructions misled the jury about the elements of that offense, and that the evidence is insufficient to support the convictions for violations of 12 U.S.C. § 1818(j) and 18 U.S.C. § 2. We find no reversible error and affirm.

Background

The evidence reveals a *modus operandi* wherein Devoll would approach a financial institution, pose as the representative of a group of investors interested in purchasing the institution, and enter into negotiations for same. Devoll sought various benefits from his charade including the attempt to purchase Interstate Savings and Loan Association of Perryton, Texas with its own assets. Around May 1990 Devoll approached the management of Interstate, entered into negotiations on behalf of investors, and introduced one of his coconspirators as the CEO he planned to install after the purchase of the institution. The new CEO was permitted full access to the organization's records; in the course of this review he gathered information crucial to the conspirators' scheme of transferring Interstate's funds to a phony correspondent account which was in turn to be used to purchase the Interstate stock.

During the course of the negotiations Devoll also attempted to purchase automobiles with drafts drawn on Interstate. Although Devoll had no Interstate account and had been told that he had to open accounts and deposit money before Interstate could pay the drafts, he nevertheless received immediate possession of three cars through drafts drawn on Interstate.

In October 1990 Devoll approached the Trinity National Bank of Benbrook, Texas, representing a purported partnership interested in purchasing a controlling interest and providing the bank with a much-needed capital injection. During the course of the

2

negotiations Devoll sought to purchase two automobiles and instructed the automobile dealership to draft on Trinity. When Devoll asked Trinity to approve the draft, an employee of the bank informed Devoll that he would have to execute a loan application. Devoll's promise that he would take care of the matter later was accepted, however, based on the belief that Devoll was about to become the owner of the bank. The draft was honored; Devoll received possession of the vehicles.

At about the same time, Devoll entered into a series of negotiations with First Continental Bank of Grand Prairie, Texas, claiming that he represented a group of investors who were interested in purchasing the bank. The president of First Continental testified that the bank received three totally unauthorized drafts for three cars. Devoll received possession of at least one automobile in this manner.

Devoll was indicted in April 1992 on 17 counts charging conspiracy in violation of 18 U.S.C. § 371; four counts of bank fraud in violation of 18 U.S.C. §§ 1344, 2; five counts of false statements to FDIC banks in violation of 18 U.S.C. §§ 1014, 2; two counts of mail fraud in violation of 18 U.S.C. §§ 1341, 2; and two counts of illegal use of social security numbers. A jury found Devoll guilty of all but the social security counts and he was sentenced to 78 months imprisonment and three years of supervised release.

Devoll appeals, challenging the indictment and jury instructions relative to the charges of bank fraud under 18 U.S.C.

§ 1014, and the jury's finding that he violated Federal Reserve System Orders of Prohibition.

## Analysis

Devoll challenges the indictment on counts 3, 5, 7, 10, and 12, claiming a failure to state an offense under 18 U.S.C. § 1014,[1] This issue may be raised for the first time on appeal even though it was not raised at trial.[2]

The essence of an indictment is to inform a defendant of the charges.[3] To survive a challenge, an indictment must fairly inform a defendant of the charge and set the predicate for invocation of the double jeopardy clause in a subsequent proceeding, if necessary.[4]

---

[1] 18 U.S.C. § 1014 provides, in pertinent part:

Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both.

The indictment as to these counts charged that the defendant did "knowingly make and cause to be made a false statement of material fact to [financial institution] . . . for the purpose of influencing the actions of [said institution]."

[2] **United States v. Varkonyi**, 645 F.2d 453 (5th Cir. 1981); Fed.R.Crim.P. 12(b)(2) & (f).

[3] **United States v. Gordon**, 780 F.2d 1165 (5th Cir. 1986).

[4] **Id.; United States v. Stanley**, 765 F.2d 1224 (5th Cir. 1985); **United States v. Webb**, 747 F.2d 278 (5th Cir. 1984), cert. denied, 469 U.S. 1226 (1985).

The elements comprising a violation of 18 U.S.C. § 1014 are that the defendant made a false statement or report for the purpose of influencing in any way the action of a financial institution "upon any application, advance, . . . commitment, or loan."[5] Devoll maintains that his indictment failed to state an offense under section 1014 because it did not charge the statutory requirement that he acted for the purpose of influencing a financial institution's lending activities.  The government argues that the indictment sufficiently informed Devoll about the elements of a section 1014 violation, resting this argument in part on its contention that section 1014 does not require proof that a false statement was made for the purpose of influencing a financial institution in connection with its lending activities.  We decline the government's invitation to so interpret the statute.

We hold today that section 1014 relates only to lending activities by financial institutions.  We review the challenge to the sufficiency of the indictment in light of that holding and conclude that the indictment passes muster.  It cannot be gainsaid that the indictment did not specifically charge Devoll with fraudulent acts which were intended to influence the named financial institutions in their lending activities.  Obviously the indictment could have been drawn more artfully and could have

---

[5]**Williams v. United States**, 458 U.S. 279, 284 (1982) (superseded by statute placing check kiting within the scope of federal bank fraud).  See also, **United States v. Hord**, 6 F.3d 276, 283 (5th Cir. 1993), cert. denied, 114 S.Ct. 1551 (1994) (quoting **United States v. Bowman**, 783 F.2d 1192 (5th Cir. 1986)); **United States v. Simmons**, 503 F.2d 831 (5th Cir. 1974).

5

included charges that Devoll's conduct was intended to influence the institutions in their lending activities. Such an articulation would have been preferable but it is not constitutionally required.

Each challenged count specifically refers to section 1014 which details the elements required for its violation. In the setting of this case, that reference, coupled with the language of the indictment, satisfies minimal constitutional requirements.[6] As we have noted:

> Recognizing that an indictment must allege each and every element of an offense to pass constitutional muster, the law does not compel a ritual of words. The validity of an indictment is governed by practical, not technical considerations. Accordingly, the appropriate test in this instance is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards.[7]

Devoll next challenges the adequacy of the jury instructions, specifically, that the court failed to instruct the jury that to return a verdict of guilty it had to find that the false representations were made to influence the institutions' lending activities.[8]

The standard of review applied to jury instructions asks

---

[6]**Gordon; Varkonyi.**

[7]**Id.** at 455-56 (internal citations omitted).

[8]The district judge instructed the jury about the elements of 18 U.S.C. § 1014 as follows:

> First: That [designated bank] was federally insured;
> Second: That the defendant made or caused a false statement to be made at [designated bank]; and
> Third: That the defendant did so for the purpose of influencing some action to be taken by [designated bank].

6

whether "the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them."[9] Reversible error exists when "the jury charge, as a whole, misled the jury as to the elements of the offense."[10]

The record reflects no timely objection to the jury charge and our review, therefore, is limited to a consideration of plain error.[11] We may reverse for plain error only if we find that the error is plain and that it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."[12]

Our initial inquiry is whether there actually is error and, if found, whether it can be considered plain. As our *en banc* court has recently announced, an error is plain when it is obvious, clear, or readily apparent,[13] or "so conspicuous that 'the trial judge and prosecutor were derelict in countenancing [it], even absent the defendant's timely assistance in detecting [it]."[14]

In response to this challenge the government again contends

---

[9]**United States v. Pace**, 10 F.3d 1106, 1120-21 (5th Cir. 1993), cert. denied, 114 S.Ct. 2180 (1994) (quoting **United States v. Stacey**, 896 F.2d 75, 77 (5th Cir. 1990)).

[10]**Id.** at 1121 (quoting **United States v. Kington**, 875 F.2d 1091, 1098 (5th Cir. 1989).

[11]**United States v. Gammage**, 790 F.2d 431 (5th Cir. 1986).

[12]**United States v. Calverley**, _____ F.3d _____, No. 92-1175, slip op. 475, 478 (5th Cir. Oct. 20, 1994) (*en banc*) (quoting **United States v. Atkinson**, 297 U.S. 157, 160 (1936)).

[13]**Id.** at 479.

[14]**Id.** (quoting **United States v. Frady**, 456 U.S. 152, 163 (1982)).

that section 1014 does not require proof that a false statement was for the purpose of influencing a financial institution in connection with its lending activities. The government argues that we have adopted a broad formulation of section 1014 requiring only proof that a defendant's false statements were for the purpose of influencing an institution's actions in any way.

We reject that interpretation and conclude, as previously noted, that section 1014 applies only to actions involving lending transactions. We do so for several reasons. First and foremost, the statutory language sufficiently specifies that the false representation or fraud must be made for a purpose connected with the various lending activities or practices of the financial institution. The legislative history of section 1014 provides further support for this view. With the codification of Title 18 in 1948, 13 statutes that criminalized misrepresentation in loan requests to various credit dispensing agencies of the United States were collated in section 1014.[15] As one court thereafter concluded, "the main purpose of the statute and its predecessors has always been to protect lending institutions whose activities are important

---

[15]Act of June 25, 1948, ch. 645, § 1, 62 Stat. 752 (codified as amended in scattered sections of 18 U.S.C.). See **United States v. Payne**, 602 F.2d 1215 (5th Cir. 1979), cert. denied, 445 U.S. 903 (1980); **United States v. Pavlick**, 507 F.Supp. 359 (M.D.Pa. 1980).

According to the revisor's notes, the enumeration of "application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan" did not appear in the predecessor sections, but represents a composite of terms and transactions mentioned therein.

8

to federal policy."[16] Various committee reports that were produced when Congress considered amendments to the statute also reveal views of the statute as properly concerned with "false statements in loan and credit applications,"[17] "false statements in connection with loans or other similar transactions,"[18] or "fraud in credit transactions."[19] With this background we are not persuaded that the statute imposes liability whenever a defendant's false statement was intended to interfere with <u>any activity</u> of a financial institution; such a broad interpretation of section 1014 presumably would encompass fraud or false representations having nothing to do with financial transactions, such as fraud in an employment contract or, for example, in a contract to provide goods or services for custodial care, premises repair, or renovation.

In light of this ruling, it is manifest that the jury instruction was lacking; indeed, compared with today's holding it necessarily must be considered erroneous. But that is not the essential issue. What we must determine is whether the charge as given constituted plain error as recently defined in **Calverley**. We perforce conclude that it was not plain error.

We have held that section 1014 proscribes fraudulent conduct

---

[16]**Pavlick**, 507 F.Supp. at 363.

[17]**Id.** (quoting 1970 U.S.C.C.A.N. (91 Stat.) 4166, 4187 (Report of House Banking & Currency Committee recommending that state and federally chartered credit unions be included under section 1014)).

[18]**Id.** (quoting 1970 U.S.C.C.A.N. (91 Stat.) 5582, 5617 (Report of House Banking & Currency Committee on Housing and Urban Development Act of 1970)).

[19]**Id.** at 364.

which impacts lending activity.[20]  In other cases we appear to have viewed the statutory requirement more broadly, referring to fraud which intended to influence "any activity" of the institutions.[21] The latter cases, however, all involved attempts to interfere with conventional loan transactions.  In light of this apparent ambivalence in our precedents, at least introducing a measure of ambiguity in this area, it cannot be said that the error was plain. In view of our earlier imprecision, we cannot hold that the trial court's now-identified error was "obvious, clear, or readily apparent . . . [or] so conspicuous that the trial judge and prosecutor were derelict in countenancing [it], even absent the defendant's timely assistance."[22]

Even if we had concluded that the error was plain Devoll would have secured no surcease for it would have then been his burden to demonstrate that the error affected his substantial rights.  "[I]n most cases the affecting of substantial rights requires that the error be prejudicial; it must affect the outcome of the proceeding."[23]  In the present case, Devoll could not have met this burden considering the ample evidence that he intended to and did

---

[20]**Hord** (quoting **Bowman**); **Simmons**.

[21]See **United States v. McDow**, 27 F.3d 132 (5th Cir. 1994); **United States v. Williams**, 12 F.3d 452 (5th Cir. 1994); **United States v. Trice**, 823 F.2d 80 (5th Cir. 1987); **United States v. Thompson**, 811 F.2d 841 (5th Cir. 1987); **United States v. Davis**, 752 F.2d 963 (5th Cir. 1985).

[22]**Calverley**, _____ F.3d at _____, slip op. at 479 (internal citations omitted).

[23]**Id.** (quoting **United States v. Olano**, 113 S.Ct. 1770, 1778 (1993)).

influence the named institutions in the administration of their lending activities.  He did that in spades.

Devoll finally contends that the evidence was insufficient to support his conviction on counts 13, 14, and 15, charging violations of 18 U.S.C. § 1818(j)[24] and 12 U.S.C. § 2.[25] Specifically, Devoll argues that the government did not produce any testimony to prove the third element of section 1818(j), that he did not receive the written approval of an appropriate federal financial institution's regulatory agency prior to participating in the insured financial institution's affairs.

Devoll moved for a judgment of acquittal at the close of the

---

[24]12 U.S.C. § 1818(j) penalizes individuals who participate in the affairs of an FDIC insured financial institution while subject to an order prohibiting such participation.  According to the charge to the jury, to prove Devoll's guilt under this statute, the government was required to prove beyond a reasonable doubt:

First:    That the defendant knowingly participated in the conduct of the affairs of any insured financial institution or engaged in any activity specifically prohibited by an order;

Second:   That the defendant was subject to an order which prohibits such participation; and

Third:    That the defendant did not receive the written approval of an appropriate federal financial institution's regulatory agency prior to participating in the conduct of the affairs of any insured financial institution.

[25]18 U.S.C. § 2 provides that:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

11

government's case-in-chief, but did not renew that objection at conclusion of the case. We may consider only whether his conviction resulted in a manifest miscarriage of justice.[26] "A miscarriage of justice exists if the record is devoid of evidence pointing to guilt or if the evidence on a key element of the offense is so tenuous that a conviction would be shocking."[27]

The record contains undisputed evidence that in December 1984 the Federal Reserve System's Board of Governors placed Devoll under orders to cease and desist and orders of prohibition. The certification page attached to prosecution exhibits was signed by the associate secretary of the board, and stated that "A review of the official records of the Board has found no document that would modify, suspend, or rescind any of the attached documents." Further, an employee of the Federal Reserve System testified that while the orders of prohibition were in effect Devoll could not become involved in the affairs of a federally approved financial institution, and that the orders of prohibition were still in effect. Concluding that this evidence was sufficient to support a determination that Devoll did not receive written approval of the appropriate regulatory agency prior to participating in affairs of insured financial institutions, we are convinced beyond peradventure that there was no miscarriage of justice herein.

---

[26]**United States v. Thomas**, 12 F.3d 1350 (5th Cir.), cert. denied, 114 S.Ct. 1861 and 114 S.Ct. 2119 (1994); **United States v. Vaquero**, 997 F.2d 78 (5th Cir.), cert. denied, 114 S.Ct. 614 (1993).

[27]**Vaquero**, 997 F.2d at 82.

12

The convictions are AFFIRMED.