**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 96-11075

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFONSO LUPERCIO RAMIREZ, aka Flaco;
MIGUEL ROBLES, aka Sealed Dft. 26;
JUAN CORIA GUZMAN, aka Don Juan, aka Juanito;
UBALDO ACOSTA;
JOSE PAZ GARCIA, aka Jose Paz Garcia,
aka Hipolito Tristan, aka Chaparro, aka Don Chepe; and
ARNOLDO ROJERO, aka Guero,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas

June 29, 1998

Before JOLLY, WIENER and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This appeal arises from an alleged conspiracy to import marijuana and cocaine into the United States from Mexico. On appeal from their convictions and sentences, defendants-appellants argue that (1) the evidence was insufficient to convict certain defendants; (2) the evidence presented at trial

was inconsistent with the charges in the indictment as to certain defendants; (3) the district court erred in denying certain defendants' motions to suppress; (4) the district court abused its discretion in denying certain defendants' motions for severance and mistrial; (5) the district court abused its discretion in permitting testimony from one of the defendant's wives; (6) the government violated the Bail Reform Act and the Jencks Act; (7) the district court erred in its failure to produce a witness; (8) the district court erred in its instructions to the jury; (9) the district court incorrectly sentenced certain defendants; and (10) one defendant's trial counsel rendered ineffective assistance. For the reasons assigned, we affirm the decision of the district court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The government's evidence establishes that Jose Paz Garcia was the leader of a sophisticated drug conspiracy that was in operation from April 1990 to August 1995. The operational base of the organization was located in Dallas, with distribution outlets in Detroit, Topeka, Kansas City, Chicago, and East Moline, Illinois. In addition to Garcia, numerous members of the conspiracy were also named in the indictment. The defendants who now appeal their convictions and sentences are Jose Paz Garcia, Alfonso Ramirez, Miguel Robles, Juan Guzman, Ubaldo Acosta, and Arnoldo Rojero.

Federal Bureau of Investigation ("FBI") agents, Drug Enforcement Administration ("DEA") agents, and other law enforcement officials conducted a full investigation of Garcia and the organization's activities. Between April 21 and August 3, 1995, federal agents intercepted telephone calls by or about the appellants over seven different phones. FBI Special Agent Gabriel Ramirez testified that conversations between members of the organization including Garcia, Ramirez, Alonzo Hernandez, Robles, Miguel Segura, Acosta, Tommy Esner, and Rojero were intercepted at various

2

times.  Tapes and transcripts of these conversations were admitted into evidence at trial.

During the trial, law enforcement officers testified regarding surveillance and wiretap observations of the appellants in various motels, residences, and automobiles in and around Dallas, El Paso, Detroit, and Ann Arbor, Michigan.  The officers attested to, among other things, (1) collecting cell phone, hard line, and pager activity; (2) installing tracking devices on certain of the appellants' automobiles; (3) observing the appellants transporting and delivering suitcases; and (4) executing searches that yielded marijuana, scales, packing material, and narcotics notes.  Garcia was arrested shortly after paying El Paso Deputy Sheriff Larry Guerra over $79,000 for five kilograms of cocaine in an undercover sale.  Thus began a string of arrests of the appellants and codefendants, most of whom were taken into custody on August 2 and 3, 1995.  A federal grand jury returned a four count indictment against Garcia, Rojero, Ramirez, Guzman, Acosta, Robles, and 26 codefendants on August 29, 1995.  All six appellants were charged in count one with conspiracy to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 846.  Garcia was also charged with unlawful reentry into the United States after deportation in violation of 8 U.S.C. § 1326(a) and (b)(1).  The indictment was superseded on February 7, 1996 and again on March 5, 1996 to amend the date of commencement of the conspiracy from August 1994 to April 1990.  All six appellants entered pleas of not guilty and trial began on April 8, 1996.

The government established its case against the appellants in part through testimony of other codefendants, primarily that of Blanca Martinez.  Martinez testified as to her involvement as a cocaine trafficker and marijuana dealer for Garcia, as well as her involvement with the other appellants.  She offered specific knowledge of transactions, drug amounts, and payment amounts relating to the appellants' activities.  On May 17, 1996, the jury returned a verdict of guilty as to all appellants on

count one of the indictment.

Jose Paz Garcia was sentenced to life imprisonment and a fifty dollar mandatory special assessment. Alfonso Ramirez was sentenced to life imprisonment, five years supervised release, and a fifty dollar mandatory special assessment. Miguel Robles was sentenced to ten years imprisonment, five years supervised release, and a fifty dollar mandatory special assessment. Juan Guzman was sentenced to 204 months' imprisonment, five years of supervised release, and a mandatory special assessment of fifty dollars. Ubaldo Acosta was sentenced to a 142 month term of imprisonment, five years supervised release, a fine of $2,500, and a mandatory special assessment of fifty dollars. Arnoldo Rojero was sentenced to 264 months of imprisonment, five years supervised release, a $10,000 fine, and a fifty dollar mandatory special assessment. All six appellants timely appeal their convictions.

## DISCUSSION

### I.    Sufficiency of the Evidence

Review for sufficiency of the evidence is decidedly narrow—a conviction must be affirmed if a rational trier of fact could have found that the evidence established the essential elements of guilt beyond a reasonable doubt. See United States v. Mmahat, 106 F.3d 89, 97 (5th Cir. 1997). This circuit has noted that "[i]n applying the 'substantial evidence' or the 'sufficiency of the evidence standard,' the court must consider the evidence in light most favorable to the Government . . . ." United States v. Garcia, 155 F.3d 951, 955 n. 4 (5th Cir. 1998) (citing United States v. Cardenas, 9 F.3d 1139, 1156 (5th Cir. 1993)). Further, we will find the evidence sufficient to support the convictions of the appellants if any reasonable trier of fact could have found that the evidence presented at trial established the essential elements of the crime beyond a reasonable doubt. United

4

States v. Alix, 86 F.3d 429, 435 (5th Cir. 1996).

Defendants Robles, Guzman, Acosta, and Rojero allege that there was insufficient evidence to support a conviction of conspiracy to violate the narcotics laws. To prove a drug conspiracy in violation of 21 U.S.C. §§ 841 and 846, the government must present evidence demonstrating beyond a reasonable doubt (1) the existence of an agreement between two or more persons to violate the narcotics laws; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement. United States v. Flores-Chapa, 48 F.3d 156, 161 (5th Cir. 1995) (citing United States v. Medina, 887 F.2d 528, 530 (5th Cir. 1989)). The government contends that the wealth of testimony against the appellants offered by Blanca Martinez and the other government witnesses should be accepted as true. The jury is entitled to believe a witness unless the testimony is so incredible that it defies physical laws. United States v. Lerma, 657 F.2d 786, 789 (5th Cir. 1981), cert. denied, 455 U.S. 921,102 S.Ct. 1279, 71 L.Ed.2d 463 (1982). Further, the evidence does not have to exclude every reasonable hypothesis of innocence. United States v. Leed, 981 F.2d 202, 205 (5th Cir. 1992), cert. denied, 508 U.S. 975, 113 S.Ct. 2971, 125 L.Ed.2d 669 (1993). The government urges that in a sufficiency of the evidence context, all credibility choices that tend to support the jury's verdict should be accepted by the reviewing court. United States v. Gallo, 927 F.2d 815, 820 (5th Cir. 1991).

Having reviewed the evidence against Robles, Guzman, Acosta, and Rojero, we conclude that it supports the respective convictions. The evidence of record is sufficient to support a reasonable inference that there was an agreement between the appellants to violate the narcotics laws and that each of the appellants was a knowing and voluntary member of the drug enterprise. The record indicates that these four appellants participated in the conspiracy on multiple occasions. Law

5

enforcement officers observed Robles and two other codefendants at the Denton County Airport. The three were loading suitcases into the van of Greg Ketron, a codefendant. A subsequent traffic stop of Ketron's vehicle led to the discovery of 169 pounds of marijuana in the suitcases. On May 3, 1995, Robles was observed entering the Garcia residence in Dallas with an Igloo cooler shortly after Acosta had entered the same residence. Acosta was subsequently found in possession of $272,950. Codefendant Alvaro Vasquez testified that he had seen Robles bring cash amounts up to $20,000 or $30,000 to Garcia's home as payment for marijuana. In a telephone call intercepted by federal agents, Garcia (speaking to Jesus Vitolas) confirmed his relationship with Robles and explained Robles's need for $200,000 as payment for marijuana. The record evidence sufficiently supports Robles's conviction.

The majority of the evidence sufficient to convict Guzman came from Guzman himself after recorded conversations were introduced against him. Guzman was involved in a July 26, 1995 incident which led to the seizure of 513 pounds of marijuana belonging to the organization. The government's evidence also indicates that Guzman was intercepted over the telephone confirming that Anthony Bell, the organization's private airplane pilot, would not be involved in transporting marijuana from a particular location. Therefore, we also reject Guzman's challenge to sufficiency of the evidence.

As mentioned above, Acosta was pulled over in his vehicle and found to be carrying over $270,000 in drug proceeds shortly following his departure from Garcia's residence on May 3, 1995. The record establishes that Acosta made frequent cash deposits into his bank account throughout the first eight months of 1995 in amounts ranging into the thousands of dollars. Acosta frequently stayed overnight at the Red Roof Inn in Dallas, a location known by law enforcement agents to have been

6

used by the organization for narcotics business. On the day of the arrests, Acosta phoned the Red Roof Inn looking for codefendant Alonzo Hernandez. Upon Acosta's arrest on August 2, 1995, he possessed documentation linking himself to Garcia and Rojero. This evidence supports the involvement of Acosta in the conspiracy.

Rojero played a role in nearly all of the documented narcotics activities of the organization and his business in El Paso served as a front for narcotics dealing. The testimony of Blanca Martinez was in itself sufficient to convict Rojero. The evidence supports a reasonable inference that Rojero agreed with the other appellants to violate the narcotics laws and was a knowing and voluntary member of the conspiracy.

## II.     The Indictment Charges and the Trial Evidence

Acosta and Rojero claim that there was a fatal variance between the evidence proved at trial and the charging terms of the indictment such that a reversal is required. A variance results when the charging terms of the indictment remain unaltered, but the evidence at trial proves facts other than those alleged in the indictment. United States v. McKinney, 53 F.3d 664, 673 (5th Cir.), cert. denied, 516 U.S. 901, 116 S.Ct. 261, 133 L.Ed.2d 184 (1995). A variance between an indictment and proof at trial is material only if it prejudices a defendant's substantial rights, either by surprising the defendant at trial or by placing him at the risk of double jeopardy. United States v. Baker, 17 F.3d 94, 98 (5th Cir. 1994). Unless the defendant can demonstrate substantial prejudice, courts will rarely reverse a conviction on the basis of variance. United States v. Dean, 59 F.3d 1479, 1490 (5th Cir. 1995). In determining whether a material variance resulted in prejudice, we employ a harmless error analysis. United States v. Thomas, 12 F.3d 1350, 1357 (5th Cir.), cert. denied, 511 U.S. 1095, 114 S.Ct. 1861, 128 L.Ed.2d 483 (1994).

Acosta and Rojero suggest that the indictment charged them with entering into a conspiracy to possess and distribute marijuana and cocaine, but that the trial evidence proffered by the government supported only money laundering violations. Acosta claims a violation of his substantive rights in that the indictment failed to provide him with sufficient notice to enable his preparation of a defense. Acosta asserts that he was and is "defending himself for an alleged violation [of the money laundering statute]."

We find that Acosta and Rojero's claim is without merit. The indictment charged and the government proved a narcotics conspiracy, not a money laundering violation. The jury convicted the appellants on a narcotics conspiracy charge. Our review of the record indicates that the government offered evidence of the money seized in an effort to demonstrate that appellants possessed drug proceeds, not that they committed money laundering violations. The evidence demonstrated a conspiracy between Garcia and each of the appellants who worked for him at various times. There was no fatal variance between the charges in the indictment and the evidence presented at trial. We reject appellants' claim.

### III. Motions to Suppress

This court will review the factual findings made by the district court in denying a motion to suppress under a clearly erroneous standard. United States v. Andrews, 22 F.3d 1328, 1333 (5th Cir. 1993). However, "[t]he ultimate determination of reasonableness of the search . . . is a conclusion of law," which we review de novo. Id. (citing United States v. Hahn, 922 F.2d 243, 245 (5th Cir. 1991)).

Garcia, Ramirez, and Acosta allege that the court improperly denied their various motions to suppress. Garcia maintains that the "small quantity of cocaine" seized from the truck in which Garcia

8

was a passenger and codefendant Miguel Segura was driving at the time of their August 2, 1995 arrest is irrelevant to the charges against him. Contending that he never was charged with possession of the cocaine in the vehicle, Garcia argues that this evidence likely created an unfair link in the jurors' minds between himself and the possession of cocaine. He further urges that the evidence does not make the determination whether he is the leader of a drug conspiracy more or less probable. Garcia also asserts that because the vehicle in which the cocaine was discovered does not belong to him, there is an insufficient link between himself and the cocaine. The government insists that the evidence was relevant and properly admitted. Trial testimony from DEA Special Agent Keith Bishop indicates that Garcia was arrested pursuant to Bishop's instructions on August 2, 1995. Numerous drug and money seizures had been directly linked back to Garcia through intercepted conversations. As a result, once Garcia was "located on the street," Bishop instructed detectives to arrest him. Dallas Police Detective Montemayor and a patrol officer effected the arrest. Garcia and Segura were in a pickup truck (which is believed to have belonged to Segura) at the time of their warrantless arrest. They were personally searched, the vehicle was impounded by DEA agents, and a subsequent inventory search of the vehicle was made.

It is well-established that under the Fourth Amendment, a warrantless arrest must be based on probable cause. United States v. Shugart, 117 F.3d 838, 846 (5th Cir. 1997) (citing United States v. Levine, 80 F.3d 129, 132 (5th Cir.), cert. denied, --- U.S. --- , 117 S.Ct. 83, 136 L.Ed.2d 40 (1996)). Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. Id. (citing United States v. Wadley, 59 F.3d 510, 512 (5th Cir.1995)). The presence of probable cause is a mixed question of fact and law. Wadley, 59

9

F.3d at 512. This court will not disturb the factual findings of the district court absent clear error. Accepting these facts, the ultimate determination of whether there is probable cause for the arrest is a question of law to be reviewed de novo. Id.

Relying on the testimony of Agent Bishop, the district court in this case found that there was probable cause for the arrests and that the searches made pursuant to the arrest also were proper.[1] We conclude that the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that Garcia had committed or was committing an offense. See Harper v. Harris County, Texas, 21 F.3d 597, 601 (5th Cir. 1994). Having concluded that the arrest itself was valid, we further hold that it was lawful to conduct the subsequent search of Garcia and Segura without a warrant. See United States v. Johnson, 834 F.2d 1191, 1195 (5th Cir. 1987); see also United States v. McFarland, 633 F.2d 427, 429 (5th Cir. 1980) ("The purpose of the doctrine permitting searches incident to arrest is to allow discovery and preservation of destructible evidence. . . .") (citing Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2039-40, 23 L.Ed.2d 685 (1969)).

Ramirez contests the denial of his motion to suppress evidence obtained from his vehicle

---

[1]The following excerpt is taken from Bishop's trial testimony:

[The court]:   And for the record, and because of the motion which has been filed by the Defendant, can you state into the record the reason that Mr. Garcia was arrested and was arrested without a warrant?

[Bishop]:   Yes sir. Mr. Garcia was arrested pursuant to my instructions to officers and agents on the street. He had been the target of our investigation which had been on-going as far as the Title 3 intercepts for approximately four months at that time. There had been numerous drug and money seizures that had been directly tied back to him through intercepted conversations, including himself being intercepted discussing the seizures and -- of money and drugs. And once Mr. Garcia was located on the street, the word was given for him to be arrested.

10

pursuant to a warrantless search. The government alleges that following the August 3, 1995 arrests, Ramirez abandoned his vehicle and fled the area. On several occasions, law enforcement officers contacted relatives of Ramirez's in an attempt to locate him and determine ownership of the car. His wife and mother-in-law indicated that Ramirez had fled to Mexico. The car was then impounded and officers found a white powdery substance in plain view on the vehicle's seat. The government then conducted an ion scan of the vehicle—nearly two weeks after the vehicle was first abandoned—which yielded evidence that was introduced at trial.

The record evidence indicates that Ramirez had abandoned his white Ford Escort in the parking lot of Garcia's restaurant, the El Paraiso. At the suppression hearing on this topic, Special Agent Bishop indicated that cooperating individuals informed law enforcement agents that Ramirez had fled, leaving his car behind. Based on this information and confirmation from Ramirez's family that Ramirez had in fact fled the country, the officers had a good faith reason to believe that the car had been abandoned. Because he abandoned the property, Ramirez cannot successfully challenge the search of the car. United States v. Savage, 564 F.2d 728 (5th Cir. 1977). The evidence from the car was properly admitted into evidence. We reject Ramirez's challenge.

Acosta argues that the May 3 traffic stop of his vehicle was pretextual and that the subsequent seizure of $272,950 from his vehicle should have been suppressed. Further, Acosta contends that no drugs or contraband were found in the vehicle and that the money discovered was irrelevant to the narcotics conspiracy charge against him. The government maintains that as long as the stop and search of Acosta's vehicle was made in part for a valid, legal reason, it is irrelevant that officers may have used technical violations as a cover for exploring their suspicion of more serious violations. United States v. Flores, 63 F.3d 1342, 1362 (5th Cir. 1995). We find that the stop and

11

subsequent search and seizure were valid. Officer Joe Salinas testified that he made the stop because a passenger in the vehicle—Acosta's wife—was not wearing a seatbelt. A warning was issued to Acosta's wife and a valid consent to search the vehicle was then obtained. The search yielded the $272,950 in cash. In Whren v. United States, the Supreme Court "dismissed the idea that an ulterior motive might serve to strip [law enforcement] agents of their legal justification [for an inventory search]." 517 U.S. 806, 812, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). Analyzing previous Supreme Court decisions, the Whren Court "foreclosed any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." Id. at 813, 116 S.Ct. at 1774. The Whren Court noted that the Supreme Court had previously held that a traffic-violation arrest would not be rendered invalid because it was a mere pretext for a narcotics search. Id. at 812-13, 116 S.Ct. at 1774 (citing United States v. Robinson, 414 U.S. 218, 221 n. 1, 94 S.Ct. 467, 470 n. 1, 38 L.Ed.2d 427 (1973)). Further, the Court reaffirmed its holding that a lawful postarrest search of the person would not be rendered invalid by the fact that it was not motivated by the officer-safety concern that justifies such searches. Id. (citing Robinson, 414 U.S. at 236, 94 S.Ct. at 477). We do not challenge the motivation of the law enforcement agents who stopped Acosta because, as the Supreme Court definitively stated, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren, 517 U.S. at 813, 116 S.Ct. at 1774. Thus, even if the agents believed that Acosta may have possessed narcotics, such belief is not subject to inquiry. Acosta's challenge thus fails.

## IV.    Motions for Severance and Mistrial

This court may only review the denial of a motion for severance for abuse of discretion. United States v. Long, 894 F.2d 101, 103 (5th Cir. 1990) (citing United States v. Wheeler, 802 F.2d

12

778, 781 (5th Cir. 1986), <u>cert. denied</u>, 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987)).

Generally, persons indicted together should be tried together. <u>United States v. Avarello</u>, 592 F.2d 1339, 1345 (5th Cir. 1979).

Ramirez, Robles, and Rojero contest the introduction of evidence that Ramirez had committed or been involved in a murder. They maintain that the government was responsible for the introduction of such evidence. Special Agent Gabriel Ramirez testified at trial about phone conversations he had monitored during the course of this investigation. Upon cross-examination by Acosta's attorney, Gabriel Ramirez was asked about a conversation between Garcia and a man identified as "El Banado" that took place on June 7, 1995. Acosta's attorney pointed Ramirez to a specific place in the conversation in which Garcia had said to El Banado, "I don't know. I know that they killed one of them." Acosta's lawyer then asked Gabriel Ramirez to what Garcia and El Banado were referring. Gabriel Ramirez suggested that it was a recollection of hearing that Flaco (an alias for appellant Alfonso Ramirez) had killed someone. Robles and Rojero contend that they moved for a mistrial or severance and that the denial of these motions created reversible error. Alfonso Ramirez moved for a mistrial and also contends that the denial of this motion created reversible error.

The government urges that Acosta's attorney, and not the government, elicited the testimony regarding the alleged murder. Suggesting that any of the other defense attorneys could have stopped the prejudicial testimony by objecting to Acosta's questioning, the government claims that there was no reason for a mistrial. We agree with the government's reasoning and conclude that the district court did not abuse its discretion.

Along similar lines, Ramirez argues that he was prejudicially misjoined with the other codefendants in this case and was thus deprived of a fair trial under Federal Rule of Criminal

13

Procedure 8 and 14. Contending that the trial court erred in denying severance, Ramirez asserts that as a result some evidence not admissible as to him was presented to the jury. He suggests that although the defendants in this case were alleged to have conspired with Jose Paz Garcia, the evidence proved that the defendants involvement with Garcia ended before Ramirez's conspiratorial involvement with Garcia had even begun. Ramirez contends that evidence at trial established multiple conspiracies rather than a single one.

The government responds by drawing our attention to United States v. Levy-Cordero, 67 F.3d 1002, 1007 (5th Cir. 1995), in which this court affirmed the district court's denial of a motion for severance in a similar context. In that case, the appellant claimed that a severance was necessary because there was so much more evidence against one defendant than against other defendants. That court suggested that the mere fact that a "minnow" stands trial with a "kingfish" at whom most of the government's ammunition is aimed does not necessitate separate trials. Id. A defendant is not entitled to a severance merely because the evidence against a codefendant is more damaging than the evidence against her. See United States v. Williams, 809 F.2d 1072, 1085 (5th Cir. 1987). If the jury can keep separate the evidence that is relevant to each defendant, even if the task is difficult, and render a fair and impartial verdict as to each defendant, a severance should not be granted. See United States v. Walters, 87 F.3d 663, 670-71 (5th Cir. 1996).

We find that the district court did not abuse its discretion by refusing to grant the motion for severance. To prevail on a prejudicial "spillover" of evidence, a defendant must show that "a miscarriage of justice looms." United States v. Pierro, 32 F.3d 611, 615 (1st Cir. 1994). Ramirez has failed to make such a showing on appeal. We have held that generally, persons indicted together should be tried together. United States v. Avarello, 592 F.2d 1339, 1345 (5th Cir. 1979). Severance

14

is not required unless the evidence is so complex or confusing that the jury would be unable to make individual determinations as to the applicability of evidence to each defendant. United States v. Bright, 630 F.2d 804, 813 (5th Cir. 1980). In this case, in which several codefendants were acquitted of all charges, it is clear that the jury did not experience difficulty in making these determinations.

**V.      Ramirez's Wife's Testimony**

The admissibility of evidence is generally reviewed for abuse of discretion. United States v. Pace, 10 F.3d 1106, 1113 (5th Cir. 1993).

Ramirez asserts that despite proper objections, his wife, Sophie Vielma, was erroneously allowed to testify about confidential communications between herself and Ramirez. Namely, he contends that her testimony regarding Ramirez's admission that he was a drug dealer was not evidence in furtherance of a conspiracy and was a confidential marital communication. Asserting that Vielma's involvement was that of an "unindicted coconspirator," the government insists that this circuit's decision in United States v. Mendoza, 574 F.2d 1373, 1381 (5th Cir. 1978), cert. denied, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978), does not protect discussion of crimes in which both spouses are participating.

The marital privilege is divided into two distinct privileges by the federal courts. The first privilege bars a spouse from testifying adversely to the other. The second privilege bars a spouse from testifying as to the confidential marital communications of the other. United States v. Entrekin, 624 F.2d 597, 598 (5th Cir. 1980); Mendoza, 574 F.2d at 1379. Because the questions asked of Vielma were directed toward discovery of the substance of conversations between Ramirez and Vielma, it is the second privilege with which we are concerned. Despite the fact that the marital

15

privilege has been sharply criticized for its basis in outdated notions and its limitation of the public "right to every man's evidence," Trammel v. United States, 445 U.S. 40, 43-50, 100 S.Ct. 906, 909-12, 63 L.Ed.2d 661 (1980), courts conti nue to recognize the right of a spouse to refuse to testify regarding interspousal communications. Id. Still, this circuit has held that "conversations between husband and wife about crimes in which they are jointly participating when the conversations occur . . . do not fall within the privilege's protection of confidential marital communications." Mendoza, 574 F.2d at 1381.

Ramirez argues that the joint participation exception does not apply to this case. We disagree with his analysis. While Vielma was not indicted in this case, the record reveals that she was a participant in the conspiracy.[2] This circuit adopted the Seventh Circuit's approach to the joint participation exception when it announced that where both spouses are substantial participants in a patently illegal activity, even the most expansive marital privilege should not bar testimony. Mendoza, 574 F.2d at 1380 (citing United States v. Kahn, 471 F.2d 191, 194 (7th Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 956 (1973)). We hold that because the discussions between Ramirez and Vielma in question were in furtherance of crimes, they were not marital communications for the purpose of the marital privilege and do not fall within the privilege's ambit of protection. Ramirez's contention is therefore without merit.

## VI. The Bail Reform Act and the Jencks Act

Ramirez and Rojero respectively allege that the Bail Reform and Jencks Acts were violated

---

[2]Vielma testified that (1) she saw the large amounts of money Ramirez brought home; (2) she helped him count "drug money" in amounts up to $16,000; (3) at Garcia's request, she delivered a box to El Paso that contained $52,000 hidden in the back of a television set; and (4) that Garcia paid her $1,000 for the delivery.

16

in this case. Ramirez argues that he was denied his rights under the Bail Reform Act, which states

in relevant part that a detention hearing:

> . . . shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days . . . , and a continuance on motion of the attorney for the Government may not exceed three days. . . .

18 U.S.C.A. § 3142. Ramirez alleges that his detention hearing was delayed more than six months.

He further suggests that the government took no action to secure a detention hearing though the

temporary detention order holding Ramirez in custody without bond expired on September 19, 1995.

Ramirez argues that such delay was both "aggravated and intentional." Ramirez concedes that as a

result of the Supreme Court's decision in United States v. Montalvo-Murillo, 495 U.S. 711, 110 S.Ct.

2072, 109 L.Ed.2d 720 (1990), strict adherence to the time deadlines of the Act is no longer required.

He nonetheless notes that the Court contemplated only a brief, good faith, or inadvertent delay that

the government seeks to remedy by promptly seeking and moving forward with a hearing. Id. at 721,

110 S.Ct. at 2079. The government maintains that even if a detention hearing should have been held

earlier than it was, the issue is now moot because Ramirez has been convicted, sentenced, and is not

entitled to bail. United States v. O'Shaughnessy, 772 F.2d 112, 113 (5th Cir. 1985) (internal citation

omitted).

We find convincing the government's argument that our holding in O'Shaughnessy is

applicable to the instant case. The issue Ramirez raises has been mooted by his conviction and

sentence. As the O'Shaughnessy court recognized "[n]ormally, when mootness is noticed on appeal,

the practice is to vacate the judgment below and remand to the district court with the direction to

17

dismiss the claim, in order to prevent the res judicat a effect that would be afforded the trial court judgment by a mere dismissal of the appeal as moot." Id. (citing United States v. Munsingwear, Inc., 340 U.S. 36, 39-40, 71 S.Ct. 104, 106-07, 95 L.Ed. 36 (1950)). However, the court noted that there was no functional reason for remand to the district court to order it to vacate the orders relating to pretrial detention and bail already superseded by conviction and sentence. Id. Nor is there reason for such disposition in the present circumstances. Because the issue is no longer "live," we dismiss Ramirez's challenge as moot.

Rojero argues that his conviction must be reversed because of a Jencks Act violation. The Jencks Act provides, in pertinent part, that:

> After a witness called by the United States has testified on direct examination, the court shall, *on motion of the defendant*, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500 (emphasis added). Rojero suggests that certain government witness interview material was not produced to him and that the government previously "agreed to provide all Jencks Act material." Presumably, Rojero offers this last statement by way of explanation for his failure to file a motion as the statute requires. Rojero suggests that government witness Officer Mike Hoskins testified that he had prepared interview material involving the organization's pilot, Anthony Bell. Rojero claims that the interview material amounted to Jencks Act statements that should have been turned over to the defense after Hoskins testimony.

This challenge is without merit. The government posits that the testimony was not offered by the witness with regard to Bell and therefore the subject matter requirement of the Jencks Act was not met. We find this argument persuasive. Further, this court has recognized that:

18

> the government's failure to comply with the Jencks Act does not per se require a new trial. In <u>Goldberg v. United States</u>, [425 U.S. 94, 111, 96 S.Ct. 1338, 1348, 47 L.Ed.2d 603 (1967)] the court said that, if the error was harmless, a new trial would not be required. It elaborated what it meant: Since courts cannot "speculate whether (Jencks material) could have been utilized effectively" at trial, . . . the harmless-error doctrine must be strictly applied in Jencks Act cases . . . .

<u>United States v. Beasley</u>, 576 F.2d 626, 629 (5th Cir. 1978). Under this standard, we reject Rojero's Jencks Act challenge.

## VII.    Failure to Produce a Witness

Acosta asserts that the testimony of codefendant Miguel Segura could either substantiate or contradict testimony about Acosta offered during trial, but that Segura was unavailable to testify because he had been deported. Acosta maintains that Segura—who was alleged to be "secretary" of the Garcia organization—could have offered relevant information as to the existence and/or level of Acosta's participation in the conspiracy and the drug quantities attributable to Acosta. Directing us to our decision in <u>United States v. Avila-Dominguez</u>, 610 F.2d 1266, 1270 (5th Cir. 1980), <u>cert. denied</u>, 449 U.S. 887, 101 S.Ct. 242, 66 L.Ed.2d 113 (1980), Acosta suggests that his constitutional right to due process was violated because Segura was deported before Acosta's attorney could interview him.

The government points out that <u>Avila-Dominguez</u> applies, but correctly admonishes that the case also indicates "that a defendant must be diligent in seeking to preserve the purported testimony and must demonstrate how the testimony might be helpful." Acosta failed to meet such burdens. Acosta has not provided this court with information regarding the essential nature of Segura's testimony, nor has he demonstrated his complete inability to obtain a pre-deportation interview with

Segura in order to persuade this court. Acosta had ample time to interview Segura from August 1, 1995 until May 1996—when Segura was in custody. Further, the record evidence demonstrates that Segura's illegal status was introduced at trial so that Acosta was put "on notice" that Segura's deportation was imminent. We reject Acosta's argument.

## VIII.  Jury Instructions

Acosta insists that the court (1) offered an instruction which provided a faulty definition of "conspiracy" as including attempt and (2) failed to instruct the jury to make a special finding on the amount of marijuana in the case. Acosta suggests the court reversibly erred in its instruction to the jury that a person was guilty of conspiracy to violate the narcotics laws if he "tried" to commit the crime of possessing with intent to distribute or distributing cocaine or marijuana. Acosta properly notes that 21 U.S.C. § 846 states that a person may conspire or attempt to violate the law, but does not provide for "conspiring to attempt."

Because no objection was made to the charge, we therefore review it under the plain error standard. United States v. Devoll, 39 F.3d 575, 580 (5th Cir. 1994). The general standard of review for jury instructions is whether the charge as a whole is a correct statement of law that clearly instructs. Id. at 579. While the instruction itself may have been imperfect, there is hardly a possibility that the charge " '. . . as a whole, misled the jury as to the elements of the offense.' " Id. (Internal quotation omitted). We thus cannot conclude that such a charge was a plain error by the trial court.

Acosta's second point of error can be more readily dismissed. He argues that the court erred in failing to instruct the jury to determine the amount of drugs at issue as part of its verdict. The government properly notes that the amount of drugs is not relevant to guilt or innocence. United

20

States v. Castillo, 77 F.3d 1480, 1495-96 (5th Cir. 1996). We conclude that the district court did not err.

## IX. Sentencing

Ramirez, Guzman, Acosta, and Rojero challenge the district court's finding of the amount of drugs attributable to them for sentencing guidelines purposes. The appropriate standard of review is clearly erroneous. United States v. Tremelling, 43 F.3d 148, 150 (5th Cir. 1995). Pursuant to the United States Sentencing Guidelines ("USSG"), a defendant is liable for the amount of drugs reasonably foreseeable to him during the life of the conspiracy. USSG § 1B1.3. Special Agent Bishop established the relevant amounts of marijuana and cocaine attributable to each of the appellants. This testimony was supported by evidence admitted at trial. The district court's findings were not clearly erroneous.

Appellants further challenge the district court's finding regarding sentencing. Garcia challenges the district court's finding that he was violent; Ramirez challenges the finding that he obstructed justice and that he was a "leader" of the conspiracy; and Acosta challenges the finding that he did not accept responsibility. As to all of these contentions, the record provides ample support for such findings. Thus, we conclude that there was no error by the district court.

## X. Ineffective Assistance of Counsel

Garcia seeks a reversal of his conviction, asserting that he was denied effective assistance of counsel. The record indicates that Garcia requested new counsel on the eve of trial. This request was denied. He submits that counsel did not communicate with him in the preparation of the case and that counsel's performance was deficient in light of the government's "onslaught" of evidence against him. The government postulates that Garcia's appeal for new counsel was untimely and that his counsel

performed adequately in the face of overwhelming evidence against his client. Citing <u>United States v. Bermea</u>, 30 F.3d 1539, 1574 n. 4 (5th Cir. 1994), the government reminds us that normally the Fifth Circuit does not hear claims of ineffective assistance of counsel on direct appeal without prejudice to a defendant's right to file a petition for relief under 28 U.S.C. § 2255.

Under the Supreme Court standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 692 (1984), an appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense in order to prevail on an ineffective assistance of counsel claim. Finding that Garcia demonstrates neither of these two requirements, we reject his challenge.

## CONCLUSION

For the foregoing reasons, the convictions and sentences of the appellants are hereby AFFIRMED.

22