**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose J. KOEHLER,**
**Defendant-Appellant.**

**No. 85–2625.**

United States Court of Appeals,
Fifth Circuit.

June 4, 1986.

---

Charles T. Conway, San Antonio, Tex. (Court-appointed), for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Michael R. Hardy, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WILLIAMS, JOLLY and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

We are asked to determine whether the district court properly allowed the appellant's wife to testify against him and whether the district court properly allowed into evidence a gun seized from a car driven by the appellant after the appellant's wife had consented to the search of the car. Because we find that this evidence was properly admitted, we affirm the appellant's conviction.

## I

In March 1985, a dispute arose between the appellant, Jose J. Koehler, and his wife, Blanca Koehler, during which he beat her and threatened her with a gun. Blanca called the police and Koehler left their house with the gun. Officer Ernest Trevino, a San Antonio police officer, arrived at the Koehlers' residence and was talking to Blanca when Koehler returned and joined them. Officer Lazaro Duarte, also of the San Antonio police department, arrived soon thereafter.

Blanca, clearly in the mood to tell it all, informed the officers that Koehler had some heroin in a closet. After Blanca retrieved the heroin, Koehler was arrested and placed in the squad car. At this point, Blanca stated that she wanted the car keys that were in her husband's pocket. In accordance with her request, Officer Trevino took the keys from the handcuffed Koehler, who did not protest, and gave them to her. Blanca, followed by Officer Duarte, then walked to the car that Koehler had been driving. When Blanca took the keys and opened the car door, the light inside the car came on. Officer Duarte then saw a gun case, containing a shot gun, which he seized.

Koehler, a convicted felon,[1] was indicted and charged with one count of possession of a firearm by a convicted felon. 18 U.S.C.App. § 1202.[2] After a suppression hearing, the court denied Koehler's motion to suppress the gun as evidence, holding that Blanca had given valid consent to seize the

---

1. Koehler had previously been convicted of forgery, possession of marijuana with intent to distribute, escape from a federal prison, and willful obstruction and prevention of an investigation by means of assault.

2. 18 U.S.C.App. § 1202 provides in pertinent part:

Any person who—
(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony
    . . . .
. . . and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

gun from the car. At both the suppression hearing and the trial, the district court allowed Blanca to testify over Koehler's objection that the testimony violated the marital privilege.

Koehler was found guilty by a jury and sentenced to eighteen months imprisonment. He filed a timely notice of appeal.

## II

### A.

Koehler raises two issues on appeal. First, Koehler contends that the district court erred in permitting Blanca to testify at both the suppression hearing and the trial over his objection that Blanca's testimony violated the marital privilege. Second, Koehler contends that the district court erred by denying his motion to suppress the gun seized from the car.

### B.

Blanca testified against Koehler at the suppression hearing and at trial. On both occasions, Koehler objected to the testimony on the grounds that he had a right to invoke the marital privilege. On appeal, he claims that the district court improperly overruled his objection. His arguments fail to convince us.

■ For purposes of our discussion we first separate the two distinct marital privileges. The first privilege, the witness-spouse privilege, prevents the government from compelling a spouse to testify against his or her spouse. In federal court, however, the Supreme Court has held that this privilege may be asserted only by the witness spouse, not the defendant spouse. *Trammel v. United States*, 445 U.S. 40, 53, 100 S.Ct. 906, 914, 63 L.Ed.2d 186 (1980). Since only Blanca can invoke witness-spouse privilege in this case, and since Blanca voluntarily testified at both the suppression hearing and the trial, Koehler's contention that the district court erred in allowing Blanca generally to testify must

be rejected. *See United States v. Archer*, 733 F.2d 354 (5th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 196, 83 L.Ed.2d 128 (1984).

The second marital privilege is the spousal communication privilege. *Wolfle v. United States*, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934). This privilege protects communications "uttered in private between husband and wife." *Archer*, 733 F.2d at 359. The privilege applies only to communications, and not to acts. *Pereira v. United States*, 347 U.S. 1, 6–7, 74 S.Ct. 358, 361, 98 L.Ed. 435 (1954). At trial, Koehler's objections were based on a generalized marital privilege instead of the more specific spousal communication privilege. For this reason, we must review the district court's ruling that Blanca's testimony was admissible under the plain error doctrine. Fed.R.Crim.P. 52(b);[3] *United States v. Brown*, 634 F.2d 819, 829 (5th Cir.1981).

■ We start by noting that anything that Koehler stated in front of the police officers is not privileged, because the spousal communication privilege applies only to husband/wife communications when no third party is present. *Wolfle*, 291 U.S. at 14, 54 S.Ct. at 280. Thus, any testimony relating to statements made in front of the police was properly admitted. Second, most of Blanca's testimony primarily concerned the violent acts of her husband, not confidential communications. Since acts are not protected under the spousal communication privilege, any testimony regarding Koehler's acts was also properly admitted. After Blanca's testimony concerning nonprivileged communications and Koehler's acts is removed from consideration, there remain approximately eight privileged communications to which Blanca testified at trial. Most of these remarks were in the context of Koehler's beating and threatening Blanca. After considering the privileged testimony in re-

---

**3.** Rule 52 states in pertinent part:
   (b) Plain Error. Plain errors or defects affecting substantial rights may be noticed al-

though they were not brought to the attention of the court.

lation to the whole of Blanca's testimony, which was mostly about acts, and the fact that Koehler's prosecution was for possession of a firearm by a convicted felon and not for assaulting Blanca, we hold that the privileged testimony does not rise to the level of affecting Koehler's substantial rights in this trial. Fed.R.Crim.P. 52(b); *Pereira,* 347 U.S. at 7, 74 S.Ct. at 362. Thus, we find that the district court did not commit "plain error" in allowing these few confidential communications to be admitted into evidence in the context of this trial. *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

## C.

Koehler's second contention on appeal is that the district court erred in denying Koehler's motion to suppress the gun seized from the car. Koehler argues that the government lacked justification for the warrantless search of the car, that a warrant should have therefore been obtained, *see Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), and thus the gun should have been suppressed as evidence. The district court, rejecting Koehler's argument, held that the gun was admissible evidence because Blanca consented to, indeed requested, the search of the car.

The fact that Blanca voluntarily consented to the search is undisputed. The question we are asked to decide is whether Blanca had the requisite common authority over the car so that her consent to the search was valid. We begin by noting that consent is an exception to the requirement that searches by the government must be conducted pursuant to a warrant. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Consent by a person who possesses common authority over premises or effects is valid as against a non-consenting person with whom that authority is shared. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974).

In *Matlock,* the Supreme Court only briefly discussed the elements necessary to a determination of whether the consenting party shared joint control with the non-consenting party. The Court wrote:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-habitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched (citations omitted).

*Matlock,* 94 S.Ct. at 993 n. 7.

In order to determine whether Blanca had the authority to consent to the search, it is relevant to examine the circumstances surrounding the ownership as well as possession of the car and the events leading up to the search. First, title to the car was in Blanca's name and Blanca alone was liable for the debt incurred in purchasing the car. Second, despite her legal ownership, Blanca testified at the suppression hearing that she considered the car to be Koehler's because he "drove it all the time because of the plain fact that he wouldn't let me drive it." Blanca also testified that Koehler hid the keys from her. At trial, however, Blanca also testified that her youngest son, Brian, drove the car with Koehler's knowledge. Third, at the time of the search, Koehler had been arrested and the keys had been turned over to Blanca.[4]

4. Koehler does not raise on appeal the question whether the taking of the keys violated his fourth amendment rights. Nevertheless, even if, under the circumstances of this case, taking the keys constituted a search, it would have

Moreover, since Blanca was the legal owner of the car, she was entitled to the keys of the car and it was proper for the police to deliver the keys to her. The record does not indicate that Koehler objected either to Officer Trevino's taking the keys and giving them to Blanca, or to Blanca's opening the car door. Thus, the facts show that in the moments leading to the search, Blanca had gained legal access to the car and had the right to permit the inspection of the car in her own right.

■ Under these facts, we hold that the district court properly found that, at the time she opened the car door, Blanca had common authority over the car so that her voluntary consent rendered the search constitutional. The only fact that suggests that Blanca could not consent to the search is that prior to his arrest Koehler prevented Blanca from gaining access to the car. We hold that under the circumstances that developed in this case, this fact does not invalidate Blanca's consent. Although Blanca had limited access to the car prior to Koehler's arrest, at the time of the search, she had access to and control over the car. We reject any contention that Koehler's coercion in earlier prohibiting Blanca access to the car precluded her from validly consenting to the search once she regained such access. *See United States v. Hughes*, 441 F.2d 12, 18 (5th Cir.), *cert. denied*, 404 U.S. 849, 92 S.Ct. 156, 36 L.Ed.2d 88 (1971).[5]

### III

The district court properly allowed Blanca to testify against Koehler and correctly found that Blanca was authorized to consent to the search of the car. For these reasons, the judgment of the district court is

**AFFIRMED.**

been reasonable as the search was contemporaneous with and incident to a lawful arrest.

5. As an independent ground for affirmance, the government argues that the search was conducted by Blanca as a private citizen and thus not subject to the requirements of the fourth amendment. *United States v. Jacobsen*, 466 U.S.

109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Under circumstances similar to the instant case, this court has accepted this argument. *United States v. Maxwell*, 484 F.2d 1350 (5th Cir.1973). Because we hold that Blanca had authority to consent to the search, however, we find it unnecessary to address this additional question.