# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 20, 2009

Charles R. Fulbruge III
Clerk

No. 08-31168

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GARLAND D. MILLER,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, and GARZA and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Defendant-Appellant Garland Miller appeals a conviction and sentence, following a jury trial, on a two-count indictment alleging tax evasion in violation of 26 U.S.C. § 7201.  We AFFIRM.

## I.  BACKGROUND

Dr. Garland Miller ("Miller") was a general practitioner with an office in Zwolle, Louisiana.  He employed six staff members, including his then-wife, Rhonda Miller ("Mrs. Miller"),[1] a registered nurse who worked with him to manage the practice.  Miller owned a clinical building that he leased to DeSoto

---

[1] The Millers separated in July 2002 and divorced in 2003.

Regional Health System ("DeSoto"), a hospital in Mansfield, Louisiana. Miller and DeSoto executed a lease agreement for the facility effective January 19, 2000. On January 6, 2000, Miller executed an employment agreement with DeSoto, also effective January 19, 2000. Under that agreement, DeSoto paid all the clinic's expenses, set the fee schedules, retained ownership of records, and was owed all income received after January 19, 2000, generated from patient care or treatment at the clinic.[2] In return, Miller and his staff became employees of DeSoto. Miller was permitted to keep his accounts receivable earned prior to the effective date of the agreement, and received a salary and bonuses. Miller and DeSoto re-executed the employment agreement in March 2000 to reflect an increase in Miller's salary.

In 2002, a dispute arose over DeSoto's salary payments to Miller.[3] On December 16, 2002, Miller and DeSoto mediated their differences and reached a tentative agreement. The proposed agreement released both parties from all claims related to past salary payments to Miller. The elements of the agreement were handwritten and signed by Miller and DeSoto's representatives, and were subject to approval by DeSoto's board of directors. Later that day, DeSoto's board held a special meeting to consider the proposed terms. The board initially voted to reject the proposed settlement, but subsequently withheld voting until the terms could be further clarified. On December 30, 2002, during its regular meeting, the board agreed to draft an acceptable mediation settlement after determining that the terms would indemnify Miller solely for past

---

[2] The agreement included exceptions for some fees which are not relevant to this appeal.

[3] Due to a payroll error, Miller was paid at the salary rate under the first employment agreement, not the increased rate in the second employment agreement.

compensation.[4] The minutes of the December 30 meeting reflect that a letter was sent to Miller terminating the employment agreement effective 30 days from the letter's mailing, and that the board planned to terminate the lease agreement.

A few days after the December 30 board meeting, employees in DeSoto's billing department reported that Miller's clinic was not disclosing all patient visits and bills to DeSoto as required by Miller's employment agreement. These concerns were relayed to Ron Wolff ("Wolff"), DeSoto's interim CEO.[5] Wolff conducted inquiries and determined that patient bills were being distributed and collected directly by the clinic, instead of being sent to DeSoto to collect payment. In addition, the funds collected were being deposited in Miller's personal business account, not into the clinic's account established by DeSoto. These actions violated the express terms of Miller's employment agreement.

At a board meeting in mid-January 2003, Wolff disclosed his findings, and the board decided to terminate Miller's employment agreement effective immediately. On January 24, 2003, Wolff and employees of DeSoto entered the clinic to search for and remove patient files and billing records. After reviewing Miller's computers, they determined that the clinic's Medical Manager software (related to billing) contained two sets of invoices. The billing records and invoices were turned over to local law enforcement officials, who in turn contacted the IRS.

On March 28, 2007, Miller was indicted on two counts of tax evasion. Specifically, Miller allegedly earned taxable income in 2000 and 2001 for which taxes were due, but attempted to evade the tax by: (1) failing to timely file tax

---

[4] The board did not vote to approve the settlement; instead, it decided to vote on the agreement at a later time. No evidence was presented regarding whether the board subsequently addressed the agreement.

[5] Wolff joined DeSoto as interim CEO on January 2, 2003.

returns; (2) failing to pay tax on the income; (3) "converting . . . payments to him or his wife to cash and money orders"; and (4) "embezzling payments due to DeSoto . . . which he then converted . . . to cash and money orders," all in violation of 26 U.S.C. § 7201.

Prior to trial, the district court denied Miller's motion to admit evidence of the mediation and negotiations related to his contract dispute with DeSoto.[6] The district court ruled that the evidence was not admissible under Federal Rule of Evidence ("FRE") 408 or its exceptions. Even if the evidence was admissible, the compensation claim was not relevant to the claims of embezzlement because the alleged embezzlement was not a topic of the mediation, nor was it addressed by DeSoto's board when it considered the mediation settlement. The district court also granted the Government's motion *in limine* to exclude documents and videotapes related to Miller's membership in Save-A-Patriot Fellowship ("Save-A-Patriot"), an organization which advocates that Americans are not obligated to pay taxes based on interpretations of the Internal Revenue Code.[7] Also excluded was Miller's proposed testimony regarding his beliefs about the constitutionality or validity of the tax laws.

At trial, the Government presented extensive testimonial and documentary evidence that Miller failed to maintain a personal bank account during the tax years 2000 and 2001, and intermingled business and personal transactions. The evidence also showed that Miller's taxable income for 2000 and 2001 totaled $501,716.21, of which $89,130.35 remained outstanding.

---

[6] Miller proffered the evidence at the conclusion of trial, including: (1) an unsigned proposed receipt and release between Miller and DeSoto; (2) the handwritten "Elements of Agreement" signed by the parties; (3) minutes from DeSoto's board meetings held on December 16 and 30, 2002; and (4) summary of proposed testimony from the attorney who represented Miller during the mediation.

[7] The court ruled that Miller could testify at trial about his reliance on the Save-A-Patriot materials.

Further, the evidence demonstrated that Miller purchased approximately $137,000 in money orders and cashier's checks during 2000 and 2001. The high volume of cash-based transactions made it difficult to determine Miller's tax liability for 2000 and 2001. Moreover, Miller failed to file tax returns or pay income tax for tax years 1995 through 2001, but later resumed filing them for tax year 2002.

Mrs. Miller testified, over Miller's objections, regarding ongoing conversations with Miller during their marriage in which they disagreed about Miller's decision not to file income tax returns. She also testified that she ultimately consented to Miller's decision, even though she believed that she was committing a crime by failing to file. In a hearing outside the jury's presence, the court ruled that the testimony was not protected by the confidential marital communications privilege because the conversations related to joint participation in criminal activity—i.e., tax evasion.[8]

Miller was the sole witness for the defense. He testified that in 1995, after being audited by the IRS, he joined Save-A-Patriot. He also studied materials provided by Save-A-Patriot. Based on his study of the materials and of the Internal Revenue Code, he believed that the income tax system was voluntary and that he was not required to pay taxes, though he had filed tax returns in the past. Because of this deeply held belief, he did not file tax returns for tax years 1995 through 2001. After DeSoto removed the billing records from the clinic, Miller consulted legal counsel, who advised him to recommence filing returns. He also testified that Mrs. Miller disagreed with his decision not to file tax returns.

At the jury charge conference, Miller objected to the following jury instruction regarding willful blindness or deliberate ignorance:

---

[8] Mrs. Miller was not charged with any violations of the Internal Revenue Code.

> You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

The district court overruled Miller's objection, and the instruction was read to the jury at the close of trial.

On July 10, 2008, the jury returned a verdict of guilty on both counts. Miller timely filed a motion for judgment of acquittal or, alternatively, for a new trial. On October 31, 2008, the district court denied Miller's motion. The district court concluded that the evidence at trial supported the jury's decision that Miller actively and willfully attempted to evade paying income taxes. In addition, the willful blindness/deliberate ignorance instruction was properly before the jury given the evidence raised at trial regarding Miller's conversion and embezzlement activities. Miller was then sentenced to 48 months imprisonment and was ordered to pay $55,470.94 in restitution to DeSoto, $89,130.35 in outstanding tax obligations, and a $200 assessment. He timely filed a notice of appeal.

## II. DISCUSSION

Miller contends that the district court erred when it: (1) excluded evidence that Miller and representatives of DeSoto negotiated a tentative settlement agreement regarding disputed payments under Miller's employment contract; (2) overruled Miller's objection to testimony from Mrs. Miller regarding communications during their marriage, and assertion of the confidential marital communications privilege; (3) included a deliberate ignorance instruction to the jury at the end of the trial; and (4) denied Miller's motion for acquittal.

## A.  Admissibility of Settlement Negotiations

The trial court's evidentiary rulings are reviewed for abuse of discretion. *United States v. De Leon*, 170 F.3d 494, 497 (5th Cir. 1999).  Even if we find an abuse of discretion, the exclusion of evidence is subject to harmless error analysis. *United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998), *cert. denied*, 526 U.S. 1138 (1999).  Unless the exclusion of evidence affects a substantial right of the defendant, we will affirm the district court's evidentiary ruling. *Id.*

In addition, FRE 403 permits evidence to be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  FED. R. EVID. 403.  We have excluded evidence that might require additional fact-finding to clarify issues for the jury. *Streber v. Hunter,* 221 F.3d 701, 738 (5th Cir. 2000); *see United States v. Saldana*, 427 F.3d 298, 307 (5th Cir. 2005).

The evidence regarding settlement negotiations in this case is excludable on the grounds of relevance.  As the district court correctly noted in the pre-trial colloquy, the settlement evidence did not relate to Miller's alleged embezzlement activities.  Instead, the negotiations were limited to resolving a dispute over salary to Miller under the two employment contracts.  The minutes of the board's meeting on December 30, 2002 reflect the board's concern that the tentative settlement not extend beyond compensation issues.  Moreover, in December 2002, when the salary dispute was mediated, DeSoto's board of directors was not aware of any embezzlement.  Evidence of the embezzlement arose in January 2003, after Wolff reviewed the terms of the agreement and billing records.  The evidence's minimal probative value is outweighed substantially by the potential to confuse the jury, as it is unrelated to the specific charges of tax evasion in the indictment.  *See Saldana*, 427 F.3d at 307.

For these reasons, the district court did not abuse its discretion in excluding the evidence regarding settlement negotiations. We therefore affirm the district court's ruling on this issue.[9]

## B.    Marital Communications

As stated, the trial court's evidentiary rulings are reviewed for abuse of discretion. *DeLeon*, 170 F.3d at 497.

The marital privilege encompasses two distinct privileges. The first permits a married witness to refuse to testify adversely against his or her spouse. The witness may neither be compelled to testify nor foreclosed from testifying. *Trammel v. United States*, 445 U.S. 40, 53 (1980). The second bars one spouse from testifying as to the confidential marital communications between the spouses. *United States v. Ramirez*, 145 F.3d 345, 355 (5th Cir. 1998). The confidential communications privilege survives the marriage and may be asserted by either spouse with respect to communications that occurred during the marriage even after the marriage has terminated. *See United States v. Entrekin*, 624 F.2d 597, 598 (5th Cir. 1980). The privilege applies only to communications; it does not apply to acts. *United States v. Koehler*, 790 F.2d 1256, 1258 (5th Cir. 1986).

We have recognized an exception to the confidential marital communications privilege for those "conversations between husband and wife about crimes in which they are jointly participating . . . ." *Ramirez*, 145 F.3d at 355 (internal quotation omitted); *United States v. Chagra*, 754 F.2d 1181, 1183

---

[9] The district court also ruled that the negotiations evidence was not admissible under FRE 408, which forbids the admission of offers of compromise or negotiations for compromise in certain civil cases, or its exceptions. FED. R. EVID. 408. Though we have held that Rule 408 applies in criminal cases, *see United States v. Hays*, 872 F.2d 582, 588-89 (5th Cir. 1989), there is a split in authority in our sister circuits on this issue. *See United States v. Bailey*, 327 F.3d 1131, 1144-47 (10th Cir. 2003) (discussing circuit split). We decline to address the applicability of FRE 408 to this criminal case, however, because the evidence regarding settlement negotiations is excludable on the grounds of relevance.

(5th Cir. 1985). The testifying spouse need not be charged with a crime, so long as the testimony conveys joint criminal activity. *Ramirez*, 145 F.3d at 355.

In a mini-hearing held outside the jury's presence, Mrs. Miller testified about the billing practices and procedures she handled at the clinic and discussions she had with Miller during their marriage wherein they disagreed about his decision not to file taxes. The district court determined that these topics did not fall within the confidential marital communications privilege relying on our holdings in *Koehler* and *Ramirez*.

The district court correctly overruled Miller's objections. Mrs. Miller testified regarding Miller's practice of processing payments that were made to the medical clinic. This testimony is not privileged because it refers to acts, not communications. *Koehler*, 790 F.2d at 1258. She also testified about conversations with Miller in which they discussed how to process checks and whether they should go into business or personal accounts. This testimony involved conversations about a joint criminal activity and thus is not protected by the confidential marital privilege. *Ramirez*, 145 F.3d at 355-56. That Mrs. Miller was not charged with any crime does not preclude a finding that there was joint criminal activity. *Id.* at 355.

Mrs. Miller also testified that Miller decided not to file taxes after joining Save-a-Patriot because he believed that filing taxes was not necessary and unconstitutional. This statement is not privileged because, as noted, it involves discussion of joint criminal activity. *Ramirez*, 145 F.3d at 355-56. Further, it is not prejudicial because it is consistent with Miller's testimony that he had a good faith belief, based on his reliance on Save-A-Patriot materials, that he did not have to pay taxes.

Miller also takes issue with the following testimony from Mrs. Miller:

> Q. And do you think that during the time period of
> '96 to when you separated [from Miller] that you

9

had been committing the crime of failing to file
your income taxes?

[Defense counsel's objection, and the court's
overrule]

A. Yes, ma'am.

Miller believes that this testimony only demonstrates "guilt by association." This argument fails because the testimony's probative value is not substantially outweighed by any danger of prejudice. *See Saldana*, 427 F.3d at 307. The district court correctly determined that Mrs. Miller's testimony described her belief that she and her husband were involved in joint criminal activity, which is both highly probative and important for determining whether the marital privilege applies.

The district court did not abuse its discretion in overruling Miller's objection to Mrs. Miller's testimony regarding discussions during the marriage and his assertion of the confidential marital communications privilege. Accordingly, we affirm the district court's ruling on this issue.

## C.   **Deliberate Ignorance Jury Instruction**

We review the trial court's decision to issue a deliberate ignorance instruction for abuse of discretion. *United States v. Orji-Nwosu*, 549 F.3d 1005, 1008 (5th Cir. 2008). The district court may not instruct the jury on a charge not supported by the evidence. *United States v. Conner*, 537 F.3d 480, 486 (5th Cir. 2008). We consider whether "the charge, as a whole, was a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them." *Orji-Nwosu*, 549 F.3d at 1008 (internal citations omitted).

In assessing whether the evidence reasonably supports a charge, we consider the evidence and all reasonable inferences that may be drawn from it

in the light most favorable to the government. *Conner*, 537 F.3d at 486. Even if the district court errs in its decision to give the deliberate ignorance instruction, any such error is harmless "where substantial evidence of actual knowledge was presented [at trial]." *United States v. Ricardo*, 472 F.3d 277, 286 (5th Cir. 2006).

The deliberate ignorance instruction at issue here is included as an optional second paragraph to the definition of "knowingly" in our pattern jury instructions. 5th Cir. Pattern Jury Instructs. No. 1.37. We have held that the deliberate ignorance instruction is appropriate when the evidence shows that: (1) the defendant was subjectively aware of a high probability of the existence of illegal conduct, and (2) the defendant purposely contrived to avoid learning of the illegal conduct. *Conner*, 537 F.3d at 486; *United States v. Wisenbaker*, 14 F.3d 1022, 1027-28 (5th Cir. 1994).

Miller timely objected to the deliberate ignorance instruction and was overruled by the district court. This ruling will not be disturbed. The evidence demonstrates that Miller was subjectively aware of a high probability of existence of illegal conduct. He testified that he filed tax returns prior to 1996, which supports a finding that he knew that filing was required. Further, Mrs. Miller testified that Miller decided not to file tax returns after joining Save-a-Patriot because he felt that filing was unnecessary and unconstitutional. These facts are similar to *Wisenbaker*, in which defense witness testimony regarding the defendant's mental state defense was sufficient to support defendant's awareness of the existence of illegal conduct. 14 F.3d at 1027. Here, Mrs. Miller's testimony speaks directly to Miller's mental state defense—i.e., a good faith belief that he did not have to pay taxes—and purported "lack of guilty knowledge." *Id.*

Moreover, the district court's ruling should not be disturbed because the evidence demonstrates that Miller purposely contrived to avoid learning of the

conduct. Miller testified that he did not consult with any attorneys or tax professionals from 1996 through 2002, the tax years for which he did not file returns. Like the defendant in *Wisenbaker*, Miller also chose not to file tax returns after Mrs. Miller, who managed the clinic's bookkeeping, disagreed with him about his decision. *Id.* at 1027-28. In addition, he re-commenced filing in 2003 only after DeSoto investigated the clinic's billing and accounting records, and upon the advice of legal counsel. This evidence supports an inference that Miller purposefully contrived to avoid learning of the illegal conduct.

Even if the instruction was improper, the error is harmless because, as noted, there is ample evidence presented regarding Miller's knowledge of the illegality. For example, he knew that the Medical Manager software at the clinic had two sets of books, both directly and from conversations with Mrs. Miller, who managed the billing procedures. He also knew that he was required to file taxes because he had done so in the past.

As a whole, the deliberate ignorance charge was a correct statement of the law and clearly instructed jurors as to the principles of the law applicable to the factual issues confronting them. *Orji-Nwosu*, 549 F.3d at 1008. The district court did not abuse its discretion by including the charge. Therefore, we affirm the district court's ruling on this issue.

## D. Motion for Acquittal[10]

Because Miller timely moved for a post-trial judgment of acquittal, we review the denial of the motion *de novo*. *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007). In deciding the sufficiency of the evidence, we determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt. *Id.* We accept

---

[10] Miller filed a motion for acquittal and, alternatively, for a new trial. Neither party addresses the arguments regarding a new trial; accordingly, we do not address the issue.

the jury's credibility determinations "[u]nless a witness's testimony is incredible or patently unbelievable." *United States v. Lopez*, 74 F.3d 575, 578 (5th Cir. 1996).

> The relevant section of the Internal Revenue Code states:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

26 U.S.C. § 7201. The elements of a violation of 26 U.S.C. § 7201 are: (1) existence of a tax deficiency; (2) an affirmative act constituting an evasion or an attempted evasion of the tax; and (3) willfulness. *United States v. Nolen*, 472 F.3d 362, 377 (5th Cir. 2006).[11]

Affirmative acts that satisfy the second element may include keeping double sets of books, concealment of assets, or "any conduct, the likely effect of which would be to mislead or to conceal." *Spies v. United States*, 317 U.S. 492, 499 (1943); *see also United States v. Robinson*, 974 F.2d 575, 577 (5th Cir. 1992). To prove willfulness, the third element, the government must show that: (1) the law imposed a duty on the defendant; (2) the defendant knew of that duty; and (3) the defendant voluntarily and intentionally violated that duty. *Cheek v. United States*, 498 U.S. 192, 201 (1990); *United States v. Simkanin*, 420 F.3d 397, 404 (5th Cir. 2005).

The evidence at trial sufficiently demonstrates Miller's evasion. It is undisputed that he failed to file tax returns for tax years 2000 and 2001, as charged in the indictment. Further, Miller acted affirmatively when he converted payments made to the clinic to cash, money orders, and cashier's

---

[11] The parties agree that the evidence is sufficient to prove the first element, the existence of a tax deficiency; accordingly, that element is not at issue in this appeal.

checks. Witnesses testified that Miller's practice of converting payments made to the clinic made it difficult for the IRS to determine his income. These affirmative acts had the "likely effect of mislead[ing]" the IRS, and precluded the agency from effectively assessing his tax liability. *Spies*, 317 U.S. at 399; *Robinson*, 974 F.2d at 577. Moreover, Wolff testified that the Medical Manager software on Miller's clinic's computers included double sets of billing records. Viewing the evidence in the light most favorable to the verdict, the affirmative acts of keeping double records and conversion, coupled with the failure to file, support a finding of evasion.

In addition, the evidence supports the jury's finding of willfulness under the *Cheek* standard. Miller testified that he withheld taxes after becoming a member of Save-A-Patriot and studying the tax laws in late 1995. Miller, however, permitted taxes to be withheld from his earnings prior to 1996, which demonstrates that he knew of the duty to pay appropriate income tax. Miller also did not consult with any tax professionals regarding his failure to file taxes for 2000 and 2001, though he had done so in the past. Based on this evidence, the jury could have reasonably determined that Miller knew he had a duty to pay taxes and knowingly violated that duty.

## III. CONCLUSION

Miller has failed to demonstrate that the district court abused its discretion in its evidentiary rulings or jury instruction. He also has not demonstrated that the district court incorrectly applied the law in denying his motion for an acquittal. For the foregoing reasons, we AFFIRM his conviction on both counts.