# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 9, 2010

No. 09-41287

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

MICHELE G. KELLAR; PHILIP G. KELLAR,

Defendants–Appellants

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:08-cr-00145-RAS-DDB-2

Before STEWART, PRADO, and ELROD, Circuit Judges.

PER CURIAM:*

Philip and Michele Kellar (collectively, the "Kellars") appeal their convictions and sentences for violations of the Internal Revenue Code ("IRC"). A jury found both Michele and Philip guilty of one count of failure to pay income taxes, in violation of 26 U.S.C. § 7201; and Philip guilty of four counts of failure to file income tax returns, in violation of 26 U.S.C. § 7203. The district court sentenced the Kellars each to forty-one months' imprisonment, the high end of the recommended Guidelines range.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-41287

On appeal, the Kellars make several common arguments, and several unique to one or the other.  Both argue that the Government did not introduce sufficient evidence as to whether they willfully violated the IRC, and that the district court erred when it calculated the tax loss for purposes of sentencing.  Philip argues that the district court abused its discretion when it prohibited him from offering into evidence opinion letters that Philip alleges created his good faith belief that he owed no income tax.  Michele argues that the district court abused its discretion by not allowing her to testify as to the circumstances of her arrest, and by denying her request for a minor role reduction or downward departure at sentencing.

Because the district court allowed Philip to testify as to the contents of the opinion letters without admitting them into evidence, it did not abuse its discretion.  Likewise, it did not abuse its discretion by refusing to allow Michele to testify as to the circumstances of their arrest, as those circumstances have no relevance as to whether Michele willfully failed to comply with the IRC.  Furthermore, the Government introduced sufficient evidence for a rational jury to conclude that the Kellars willfully violated the IRC, and to conclude that Michele actively and willingly participated.  Similarly, the Government did not abuse its discretion when it found that Michele was not entitled to a minor role reduction or downward departure at sentencing.  Finally, the district court did not clearly err by adopting the Government's proffered tax loss calculation for the years that the Kellars failed to file income tax returns.  For these reasons, we affirm the Kellars' convictions and sentences.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Prior to 1995, Philip paid his income taxes consistently. That year, however, Philip met Dr. Sweet, author of *Good News for Form 1040 Filers, Bad News for the IRS*, and subsequently failed to "voluntarily" file any tax returns

2

No. 09-41287

or pay any income taxes from 1996 to 2007.  Four months after his first failure to file a tax return, Philip purchased "opinion letters,"[1] and began to conduct his own research as to whether the federal income tax was mandatory.  Philip alleges that he did not believe that his commission income was taxable, and formed his beliefs after researching "Supreme Court cases, books, the Internal Revenue Code, seminars, and professional advice from CPA[s], enrolled agents, tax attorneys," and anyone else who had "a real professional knowledge of the tax code."

In 1996, Philip married Michele, who testified that she would write, mail, notarize, or sign things for Philip because "he was her husband and she trusted him."  Michele admitted that she failed to pay income taxes while married to Philip, and chose not to because Philip told her that the IRS could not tax their wages.  She also stated that she and Philip "had a lengthy and communicative relationship" with the IRS, and that they responded to all IRS correspondence with the same request: "show me where it says my income/wages are taxable."  The Kellars allege that they never received a response to those requests.  Michele admitted that she also believed that she did not have to pay income taxes, and that those beliefs were not based solely on those of Philip.

The Government reports that the Kellars earned approximately $177,757 in 2000, $242,068 in 2001, $246,156 in 2002, $206,426 in 2003, $218,000 in 2004, $289,445 in 2005, $305,046 in 2006, and $163,661 in 2007.  In 2005, after the IRS provided notice that it had initiated a criminal investigation into the Kellars' deficiencies, the Kellars filed untimely tax returns for 2001, 2002, 2003, and 2004, but failed to pay any amounts owed.  Despite filing extensions in 2005, 2006, and 2007, the Kellars filed no tax returns at all for those years.

---

[1] The parties do not define "opinion letters," but it seems clear that they were not issued by the IRS and do not constitute any official Government position or policy.

3

No. 09-41287

During the years in question, Philip repeatedly filed forms with and sent letters to his employers claiming "99 withholding allowances," or that "no federal withholding is authorized," and signed each document "U.T.C.D.," which stands for "under threat, coercion, and duress." Michele acted similarly, filing W-4 forms which falsely claimed various withholding allowances with her employers. These actions prevented the Kellars' employers from withholding any of their income for federal taxes.

Additionally, the Kellars sent the IRS correspondence, including challenges to jurisdiction, threats to file criminal complaints, objections to bills, "administrative notices," and "administrative interrogatories." Michele threatened third parties with lawsuits if the third parties complied with IRS summonses or levies. Additionally, Philip attempted to hide his income by having his paychecks disbursed to an entity called the "Order of Gershom," and then having the payments routed back to him. The Kellars also held other bank accounts under "nominee names," such as "PMK Trust, Unlimited," and "MGK Trust, Unlimited."

In 2004, the IRS instituted a tax lien to offset its deficiency. In response to the IRS's correspondence with the Kellars, the Government states that the Kellars attempted to further conceal their income and obstruct IRS collection efforts. As an example, the Government describes how Philip opened a bank account, depositing only $25 and withdrawing that sum seven days later. Philip then submitted checks to the IRS totaling more than $500,000 as "Tender of payment in Adjustment and Set-Off." After the bank returned the checks for insufficient funds, Philip sent letters to the IRS stating that his checks "were not 'bankable items'" and insisting that the IRS cancel his debt. Around this time, Michele attempted a similar maneuver, sending checks totaling over $20,000 to the IRS on an account opened with a $10 deposit and closed nine days after opening.

4

In July 2008, law enforcement officials, including an IRS agent, rang the doorbell at the Kellars' residence, and then kicked in the door to execute arrest warrants for the Kellars on tax evasion charges. Michele alleges that the officers dragged her, Philip, and their teenage daughter out of bed and handcuffed them for officer safety. Although Michele requested to use the restroom, officers would only permit her to do so if they accompanied her. Without elaboration, Michele also alleges that the officers touched her in a "sexually inappropriate manner." Pursuant to an order from the court, a psychologist evaluated Michele, and concluded that Michele exhibited signs of Post Traumatic Stress Disorder ("PTSD"), Major Depressive Disorder ("MDD"), and "had no trust in the federal system."

## B.    Procedural Background

A grand jury issued a superseding indictment charging both Michele and Philip with one count of willful evasion of the payment of taxes, in violation of 26 U.S.C. § 7201, and Philip with four additional counts of willful failure to file income tax returns, in violation of 26 U.S.C. § 7203. At trial, the Kellars argued that they did not act "willfully." Philip attempted to introduce into evidence the opinion letters that he alleged caused him to believe in good faith that the Government could not tax his income. The district court, however, only permitted Philip to testify as to their contents, read a few excerpts, electronically project excerpts from the opinion letters to the jury, and offer biographical information and professional qualifications of the authors. The district court also provided a limiting instruction to the jury, ordering that they only consider the letters to the extent that they may have affected Philip's willfulness. Philip testified that the proffered information influenced his understanding of the federal income tax, such as his beliefs that only activities requiring a license from the Government are taxable and that where the IRC referred to "persons," it meant only artificial persons such as corporations.

5

No. 09-41287

In addition to Philip's proffer, Michele attempted to testify about the circumstances of their arrest. The Government objected on relevance grounds, and Michele responded that the circumstances would help the jury understand her perspective that "you cannot trust the government, the IRS does not want you to know that your wages are not taxable; they will come after you if you try to fight them," and that "[t]he Government's actions that morning only solidified her beliefs that she and her husband were right and the IRS was trying to scare them into being quiet." The district court sustained the Government's objection.

At the close of the Government's case, the district court denied the Kellars' motion for acquittal under Federal Rule of Criminal Procedure 29, the jury convicted the Kellars of all counts for which they had been charged, and the Kellars proceeded to sentencing. Both the Kellars and the Government made objections to the pre-sentence report ("PSR") and filed sentencing memoranda. Michele requested a minor role adjustment, which the district court denied.

The Kellars' base offense level turned largely on the amount of tax loss associated with their criminal conduct. Although they failed to pay any deficiency, the Kellars filed untimely tax returns for tax years 2001 through 2004, but failed to make any filings for tax years 2005 through 2007. For tax years 2001 through 2004, the district court calculated the tax loss based on the Kellars' filed tax returns, which included itemized deductions. For tax years 2005 through 2007, however, the district court accepted the Government's loss estimation—which used standard deductions—despite the fact that the Kellars' accountant provided a tax loss estimate using itemized deductions. The district court justified using the Government's proffered loss estimate because most of the information the Kellars' accountant used in making his estimate had been provided either by the Kellars themselves or by an unverified H&R Block tax return. The district court concluded that it could not rely on the underlying

6

information provided by the Kellars because tax evasion is a crime involving dishonesty.

The total tax loss calculated by the district court, including interest and penalties, amounted to $444,832.53 and resulted in a base offense level of twenty and a Guidelines range of thirty-three to forty-one months' imprisonment for both Philip and Michele. Had the district court adopted the tax loss calculated by the Kellars' accountant—$366,811.29, including interest and penalties—Philip and Michele's base offense level would have been eighteen with a Guidelines range of twenty-seven to thirty-three months' imprisonment. The district court sentenced both Kellars to forty-one months' imprisonment, and the Kellars timely appealed.

## II. ANALYSIS

### A.    Evidentiary Issues

#### 1.    Standard of Review

We review evidentiary rulings in criminal cases "on a heightened abuse of discretion basis." *United States v. Franklin*, 561 F.3d 398, 404 (5th Cir. 2009) (citing *United States v. Nguyen*, 504 F.3d 561, 571 (5th Cir. 2007)). Even if we find that the district court abused its discretion, the Kellars' evidentiary challenges are subject to harmless error review. *Id.* This Court has defined harmless error "as 'any error, defect, irregularity or variance that does not affect substantial rights.'" *Nguyen*, 504 F.3d at 571 (quoting *United States v. Treft*, 447 F.3d 421, 425 (5th Cir. 2006)). "'The government bears the burden of proving beyond a reasonable doubt that the error was harmless.'" *Id.* (quoting *Treft*, 447 F.3d at 425).

#### 2.    The District Court Did Not Abuse Its Discretion by Limiting the Introduction of the Proffered Opinion Letters

On appeal, Philip argues that the district court abused its discretion by refusing to admit into evidence his proffered opinion letters because (1) the

opinion letters seemed very persuasive, (2) the authors were "in a position to offer advice upon which a lay person could reasonably rely," and (3) the opinion letters were narrowly focused on his case's main issues and written with a high degree of detail. Thus, Philip argues that the district court erred by not permitting the jury to view the documents themselves in order to gauge how they may have influenced his beliefs. Philip also argues that (1) the district court could have offered a limiting instruction that would have negated any confusion by permitting the jury to read the full contents of the proffered opinion letters, (2) the district court should have considered each document individually before excluding every one of them, and (3) "the court's limiting instruction—that the law upon which [he] relied was incorrect—may have further prejudiced [him] as it could have misled the jury into thinking that the documents were so poorly written as to be obvious shams on their faces."

Federal Rule of Evidence 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." In cases addressing the willfulness prong of failure to pay taxes or file returns, we have consistently upheld allowing a defendant to testify about the documents giving rise to his or her beliefs, but excluding the documents themselves.[2] Because "the introduction of the documents themselves would have . . . little further probative value" once a defendant testifies as to their contents, but would present "a danger of confusing the jury by suggesting that the law is unsettled and that it should resolve such doubtful questions of law," *Flitcraft*, 803 F.2d at 186, we have held that a district court satisfies the "delicate balance required by Rule 403" by "excluding the documents themselves but allowing the defendant to

---

[2] *See United States v. Simkanin*, 420 F.3d 397, 412–13 (5th Cir. 2005); *United States v. Stafford*, 983 F.2d 25, 27–28 (5th Cir. 1993); *United States v. Barnett*, 945 F.2d 1296, 1301 (5th Cir. 1991); *United States v. Flitcraft*, 803 F.2d 184, 186 (5th Cir. 1986).

No. 09-41287

testify as to their contents, and the effect in forming his beliefs." *Barnett*, 945 F.2d at 1301 (citing *Flitcraft*, 803 at 185–86).[3]

In this case, the district court adopted the approach approved by our caselaw. Philip has not attempted to distinguish these cases in any meaningful way, arguing only that the Government favors a "blanket rule" which would always prevent a district court from introducing evidence of this sort in tax evasion cases."[4] We thus find that the district court did not abuse its discretion by excluding the opinion letters.[5]

### 3.    The District Court Did Not Abuse Its Discretion by Excluding Testimony Relating to the Kellars' Arrest

At trial, the Kellars testified that they believed the Government would go to great lengths to keep the public from learning the truth about the IRC. Michele's attorney questioned her during direct examination about the circumstances of her arrest, which Michele claims helped solidify her distrust of the Government, and the district court sustained an immediate Government objection on the basis of relevance. On appeal, Michele argues that the district

---

[3] *See also Simkanin*, 420 F.3d at 404 ("The defendant in a criminal tax trial . . . must be permitted to present evidence to show what he purportedly believed the law to be at the time of his allegedly criminal conduct. At the same time, however, the district court must be permitted to prevent the defendant's alleged view of the law from confusing the jury as to the actual state of the law, especially when the defendant has constructed an elaborate, but incorrect, view of the law based on a misinterpretation of numerous IRC provisions taken out of proper context.").

[4] Although Philip cites *United States v. Gaumer*, a Sixth Circuit case reversing a defendant's conviction because the trial court refused to admit a book, three legal opinions, and a excerpt from a Congressional Quarterly article, 972 F.2d 723, 724–25 (6th Cir. 1992), he neglects to cite the portion from *Gaumer* that states "[t]his does not mean that the trial court was required to permit the physical introduction of exhibits comprising hundreds of pages. At a minimum, [the] defendant should have been allowed to read the relevant excerpts to the jury." *Id.* at 725.

[5] Philip's argument that the district court violated the "best evidence rule" of Federal Rule of Evidence 1002, by not admitting the letters themselves is unavailing. Rule 1002 applies when a party wishes to "prove the content of a writing," and in this case, Philip wishes to introduce the writing to demonstrate its effect on his subjective state of mind.

court abused its discretion by doing so because the facts surrounding her arrest informed her state of mind and beliefs regarding the IRS, including the payment of income taxes and whether she willfully failed to do so.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Although, as a general rule, "[a]ll relevant evidence is admissible, . . . [e]vidence which is not relevant is not admissible." FED. R. EVID. 402.

In this case, Michele has not demonstrated how the circumstances of her arrest have any bearing on whether she willfully failed to pay her income taxes. Michele's distrust of the Government does not mean that she did not willfully violate the IRC. Additionally, the Kellars' arrest occurred after the issuance of the indictment accusing her of willful failure to pay her income taxes from 2001 through 2008. Her subsequent arrest obviously could not have affected her state of mind or served as a basis for her justification for alleged violations occurring before her arrest. We thus hold that the district court did not abuse its discretion by excluding this testimony.

## B.    Sufficiency of the Evidence Issues

### 1.    Standard of Review

Because the Kellars filed a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, we review "the district court's denial of that motion by examining the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, and asking whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Montes*, 602 F.3d 381, 388 (5th Cir. 2010) (citing *United States v. Valdez*, 453 F.3d 252, 256 (5th Cir. 2006)). "'[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly

inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)) (alteration in original).

### 2. The Government Introduced Sufficient Evidence to Sustain the Jury's Verdict as to Phillip

On appeal, Philip offers several arguments as to why the Government's evidence did not suffice to prove that he willfully failed to pay his income taxes or file tax returns. First, Philip argues that the Government never proved that the Kellars had any duty to pay income taxes, instead describing the Government's proof as "the assumption that most Americans have that if you work and make money, you have to pay income taxes." Next, Philip challenges the strength of a letter introduced by the Government sent from Philip to an IRS agent in 2006 that caused the IRS agent to "speculate" that Philip's "beliefs regarding his liability to pay taxes had changed." Philip argues that the IRS agent knew that Philip was under "tremendous pressure" and "extreme duress" when he wrote the letter, and that in any event, the letter could not suffice to demonstrate that any steps he took to avoid paying his income taxes or filing his returns before 2006 were not done with the good faith belief that he need not pay income taxes. Finally, Philip directs us to his "stubborn refusal to recant his stated beliefs . . . and his refusal to cooperate with Government efforts to force [him] to file tax returns or pay taxes except under extreme duress" as "overwhelming" evidence that his failure to file returns or pay taxes was not willful.

To establish liability for tax evasion, the Government must prove, beyond a reasonable doubt, "(1) existence of a tax deficiency; (2) an affirmative act constituting an evasion or an attempted evasion of the tax; and (3) willfulness." *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009) (citing *United States*

No. 09-41287

*v. Nolen*, 472 F.3d 362, 377 (5th Cir. 2006)). For the Kellars' convictions, the only disputed element is whether the Kellars willfully failed to pay their income taxes and whether Philip willfully failed to file his tax returns. In tax evasion cases, "[e]vidence of willfulness is ordinarily circumstantial," and

> may consist of, among other things, a failure to report a substantial amount of income, a consistent pattern of underreporting large amounts of income, the spending of large amounts of cash that cannot be reconciled with the amount of reported income, or any conduct, the likely effect of which would be to mislead or to conceal.

*United States v. Chesson*, 933 F.2d 298, 304 (5th Cir. 1991) (emphasis, citations, and internal quotation marks omitted).

The Supreme Court has held that "[w]illfulness . . . requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). "[C]arrying this burden requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good faith belief that he was not violating any of the provisions of the tax laws."[6] *Id*. at 202. The jury is free, however, to

> consider any admissible evidence from any source showing that [the defendant] was aware of his duty to file a return and to treat wages as income, including evidence showing his awareness of the relevant provisions of the Code or regulations, of court decisions rejecting his interpretation of the tax law, of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return forms and accompanying instructions that made it plain that wages should be returned as income.

*Id*.

---

[6] This specific intent requirement for tax violations abrogates the common law rule that "ignorance of the law or a mistake of law is no defense to criminal prosecution," largely because of "the complexity of the tax laws." *Cheek*, 498 U.S. at 199–200.

12

A defendant's good faith belief need not be objectively reasonable to demonstrate that he or she did not act willfully; rather, the inquiry is a subjective one. *See id.* However, the Supreme Court "distinguished a defense based on the defendant's good-faith belief that he was acting within the law from a defense based on the defendant's views that the tax laws are unconstitutional or otherwise invalid." *Simkanin*, 420 F.3d at 404 (citing *Cheek*, 498 U.S. at 204–06). "[T]he latter belief, regardless of how genuinely held by the defendant, does not negate the willfulness element." *Id.* Additionally, "the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreements with known legal duties imposed by the tax laws." *Cheek*, 498 U.S. at 203–04.

In this case, although the Kellars paid no income tax from 2000 through 2007, they earned a substantial amount of income, which in some years exceeded $300,000, and over the course of the years in question, totaled approximately $1,791,000. *See Chesson*, 933 F.2d at 304 (listing "a failure to report a substantial amount of income" as circumstantial evidence of willfulness) (citation omitted). The evidence introduced at trial also indicated that Philip complied with the relevant IRC provisions prior to 1996, filed untimely returns for tax years 2001 through 2004, filed extensions of time requests with the IRS for tax years 2005 through 2007, and admitted to IRS employees that he knew he was required to file taxes.

The IRS also warned Philip on several occasions about the consequences of his failure to file tax returns or pay his taxes. *See Cheek*, 498 U.S. at 202 ("The jury is free . . . to consider any admissible evidence from any source showing that . . . [the defendant] was aware of his duty to file a return and to treat wages as income."). Finally, the Government introduced evidence that Philip obstructed the IRS's efforts to collect the taxes that he owed. *See Chesson*, 933 F.2d at 304 (listing "any conduct, the likely effect of which would be to

mislead or to conceal," as circumstantial evidence of willfulness) (citation and emphasis omitted).    This obstructive conduct included the opening and immediate closing of a bank account with $25, and the subsequent sending of checks to the IRS for approximately $500,000 from the closed account, as well as his attempt to have his income disbursed to the "Order of Gershom" and then routed back to him.

Philip's arguments to the contrary lack merit.  The Government provided ample circumstantial evidence above and beyond Philip's correspondence with the IRS in 2006 in which he admitted his liability.    Additionally, the Government had no burden to demonstrate the law that required Philip to pay his income taxes; instead, it only had the burden of demonstrating a tax deficiency. *See Miller*, 588 F.3d at 907 ("The elements of a violation of 26 U.S.C. § 7201 are: (1) existence of a tax deficiency; (2) an affirmative act constituting an evasion or an attempted evasion of the tax; and (3) willfulness.") (citation omitted).  The Kellars do not dispute that a deficiency existed.

Philip cites no caselaw suggesting why the "tremendous pressure" and "extreme duress" he was under when he sent his correspondence to the IRS, in which he admitted his tax liability, should negate his willfulness, and the jury was at liberty to make a credibility determination that Philip knew of his responsibilities well before this admission.  Finally, Philip's beliefs, which included that "where the Internal Revenue Code referenced 'persons', it was talking about artificial persons such as corporations," seem unreasonable. *See Cheek*, 498 U.S. at 203–04 ("[T]he more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreements with known legal duties imposed by the tax laws.").  We thus hold that the Government introduced sufficient evidence to sustain Philip's conviction.

3.      **The Government Introduced Sufficient Evidence to Sustain the Jury's Verdict as to Michele**

In addition to adopting Philip's sufficiency of the evidence arguments, Michele also contends that she merely followed Philip's directions. As discussed above, we must ask only whether the evidence is such that "a rational trier of fact could have found guilt beyond a reasonable doubt." *Montes*, 602 F.3d at 388 (citation omitted). As such, we find that Michele's additional argument fails.

In *United States v. Anderson*, a defendant's sufficiency of the evidence challenge to her conviction for willfully filing a false withholding certificate "appeared to be that she followed her husband's instructions in tax matters." 577 F.2d 258, 260 (5th Cir. 1978) (per curiam). The *Anderson* court noted that the defendant "herself filled out a W-4 form at her place of employment[,] . . . claimed ten withholding allowances[, and] [w]hen asked why she wished to amend the form she offered only evasive answers." *Id*. As such, the *Anderson* court held that "a jury could reasonably have found that she possessed the requisite knowledge and willfulness." *Id*. at 261.

In this case, the Government introduced evidence showing that Michele falsified W-4 forms, including two in 1998, one claiming eight allowances and another crossing out all allowances; one in 2006 claiming three allowances; and one in 2007 claiming four allowances but including the "U.T.C.D." notation. Michele freely admitted that she shared her husband's beliefs, and when questioned about an obstructive letter she sent to the IRS, testified that Philip "doesn't force me to do anything." She also sent numerous letters challenging the authority of the IRS to collect taxes, and despite the IRS's warning that her continued defiance of the IRC could result in criminal punishment, she threatened a third party with legal action if the business disclosed information in response to an IRS subpoena. Finally, Michele opened a bank account with $10, closed the account, and sent checks from the closed account to the IRS. We

therefore hold that the Government introduced sufficient evidence to sustain the jury's verdict as to Michele.

## C.    Sentencing Issues

### 1.    Standard of Review

We review the "district court's interpretation or application of the Sentencing Guidelines . . . de novo, and its factual findings . . . for clear error." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (citation and internal quotation marks omitted).  For sentencing purposes, we must examine "the district court's determination of the tax loss for clear error." *United States v. Clark*, 139 F.3d 485, 490 (5th Cir. 1998) (citing *United States v. McCord*, 33 F.3d 1434, 1453 (5th Cir. 1994)); *see also United States v. Scher*, 601 F.3d 408, 412 (5th Cir. 2010) (stating, in a wire fraud case, that "[a] district court's loss calculation under the Sentencing Guidelines is a factual finding reviewed for clear error").  "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Cisneros-Gutierrez*, 517 F.3d at 764 (citation and internal quotation marks omitted).

We review a request for a downward departure for abuse of discretion, *United States v. Lugman*, 130 F.3d 113, 115 n.2 (5th Cir. 1997), and "[t]he defendant bears the burden of proving that his [or her] role in the offense was minor or minimal." *United States v. Atanda*, 60 F.3d 196, 198 (5th Cir. 1995) (citation omitted).  "Less culpability than other codefendants does not necessarily entitle a defendant to a role adjustment," as co-defendants must show "substantially less culpabl[ity] than the average co-participant." *United States v. Ladum*, 141 F.3d 1328, 1348 (9th Cir. 1998) (citation omitted); *see also United States v. Tilford*, 224 F.3d 865, 869 (6th Cir. 2000) ("We have held that minimal participant status is reserved primarily for someone who played a single, limited role in a very large organization."), *abrogated on other grounds*

*by Burford v. United States*, 532 U.S. 59, 64–65 (2001) (citation and internal quotation marks omitted).

### 2.    The District Court Did Not Abuse Its Discretion by Denying Michele a Role Reduction at Sentencing

Michele argues that nothing introduced at trial, in the PSR, or presented during the sentencing hearing justified her receiving the same forty-one month sentence as Philip.  She contends that the majority of the Government's case related to Philip, and that Philip himself testified that he was the "leader" and Michele the "follower."  She also argues that the district court should have considered her "fragile mental state and the pain and suffering she has suffered at the hands of the Government," and notes her diagnosis for both PTSD and MDD.

Michele's arguments lack merit.  As noted above, Michele did not play a "single, limited role in a very large organization."  *Tilford*, 224 F.3d at 869.  Additionally, Michele has not demonstrated why her "fragile mental state" was relevant to the district court's sentencing determination.  Further, Michele never presented evidence of her mental state during her case, and nothing in the record supports her request for a variance on this ground.  For these reasons, we find that the district court did not abuse its discretion by denying Michele a role reduction or downward departure at sentencing.

### 3.    The District Court Did Not Clearly Err When It Calculated the Tax Loss for Purpose of the Kellars' Sentences

The Kellars argue that the district court clearly erred when it elected to accept, for purposes of sentencing, the Government's proposed tax loss calculation for tax years 2005 through 2007—years in which the Kellars filed no returns—which estimated the tax loss using standard deductions, rather than that proposed by the Kellars' accountant, which estimated the tax loss using itemized deductions.  The Government's proposed loss calculation for tax years

No. 09-41287

2005 through 2007 resulted in a loss total of $444,832.53, a base offense level of 20, and a Guidelines range of thirty-three to forty-one months' imprisonment. Had the district court adopted the loss calculation proposed by the Kellars' accountant for tax years 2005 through 2007, the loss would have amounted to $366,811.29, a base offense level of eighteen, and a Guidelines range of twenty-seven to thirty-three months' imprisonment.

The district court reasoned that it could rely on the Kellars' actual tax filings from 2001 through 2004 because the Kellars could no longer legally change the amounts reported to the IRS for those years. In contrast, the district court discredited the calculation provided by the Kellars' accountant, finding that because tax evasion is a crime of dishonesty and the Kellars' accountant calculated his estimation based almost entirely on documents provided by the Kellars, the Government's calculation was more reliable. The Kellars contend that the district court clearly erred by doing so, arguing that "[t]here is no logical reason to believe [their] representations for years 2001–2004, then disbelieve them for 2005–2007," and that the tax loss should be calculated using itemized deductions for every year, or no year at all. They also direct us to the fact that the Government altered its estimate after their accountant discovered errors in the Government's calculation.

The district court did not clearly err when it calculated the tax loss for the purposes of the Kellars' sentences. With regard to the Kellars' argument that the district court should either use itemized deductions for every year or for no year at all, the Government directs us to the commentary of United States Sentencing Guideline ("USSG") §2T1.1, which reads:

> In determining the tax loss attributable to the offense, the court should use as many methods set forth in subsection (c) and this commentary as are necessary given the circumstances of the particular case. If none of the methods of determining the tax loss set forth fit the circumstances of the particular case, the court

18

should use any method of determining the tax loss that appears appropriate to reasonably calculate the loss that would have resulted had the offense been successfully completed.

Therefore, the Kellars' unsupported argument that the district erred by combining calculation methods fails.

The district court's choice to adopt the loss associated with the tax returns the Kellars filed for tax years 2001 through 2004, which included itemized deductions, was justified: the Kellars had no way to alter those numbers, and they represented the figure that the IRS had then identified as their tax deficiency. There exist several reasons for the district court to reject the numbers submitted by the Kellars' accountant for tax years 2005 through 2007. First, as noted by the Government, a taxpayer must elect itemized deductions when filing, as standard deductions are the default. The Kellars' failure to file tax returns for 2005 through 2007 suggests that the district court did not clearly err by using the estimate that employed the default deductions.

Additionally, the Kellars' accountant relied solely on documents provided by the Kellars themselves and unverified tax information prepared by H&R Block. Although the Kellars argue that the district court should have found the information pertaining to tax years 2005 through 2007 just as accurate and reliable as that pertaining to tax years 2001 through 2004, the Kellars had every reason to minimize their tax loss amount for tax years 2005 through 2007, as total tax loss was the predominant consideration when calculating their Guidelines range.

The Kellars' accountant also failed to include interest and penalties in his original calculation, as is required in tax loss computation in tax evasion cases. *See* USSG §2T1.1, cmt. n.1. Finally, the Kellars' accountant never reviewed his tax computations with the Kellars themselves to ensure their accuracy. Based

on these considerations, we find that the district court did not clearly err when it adopted the Government's proffered tax loss calculation.

### III. CONCLUSION

The district court did not abuse its discretion when it declined to allow the Kellars to introduce their proffered opinion letters into evidence, nor did it abuse its discretion when it declined to allow Michele to testify as to the circumstances of the Kellars' arrest. Additionally, the Government introduced sufficient evidence for a rational fact-finder to conclude, beyond a reasonable doubt, that the Kellars willfully failed to pay their income taxes and that Philip willfully failed to file his tax returns. Finally, the district court did not abuse its discretion when it denied Michele's request for a role reduction, nor did it clearly err when it calculated the total tax loss for sentencing purposes. We therefore affirm the Kellars' convictions and sentences.

AFFIRMED.